April 7, 1997
FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

FILED

**April 7, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| MAXINE O. MASON, | ( |
| | ( |
| Plaintiff-Appellee, | ( |
| | ( |
| | ( Sevier County |
| | ( |
| v. | ( Hon. Ben W. Hooper, II, |
| | ( Judge |
| | ( |
| | ( No. 03S01-9606-CV-00061 |
| KENNETH M. SEATON AND WIFE, | ( |
| LAUREL SEATON d/b/a GRAND | ( |
| HOTEL, | ( |
| | ( |
| Defendants-Appellants. | ( |

For Plaintiff-Appellee:                    For Defendants-Appellants:

James H. Ripley                            Douglas L. Dutton
  Sharp & Ripley                           Amy V. Hollars
Sevierville                                  Hodges, Doughty & Carson
                                           Knoxville

O P I N I O N

JUDGMENT OF COURT OF APPEALS
AFFIRMED; CASE REMANDED TO
TRIAL COURT.                                REID, J.

This case presents for review the decision of the Court of Appeals, reversing the trial court, that the action of retaliatory discharge "for refusing to remain silent about illegal activities" does not require a showing that the employer expressly or implicitly directed the employee to remain silent about the illegal activity. This Court affirms the decision and rationale of the Court of Appeals.

**I**

The case is before the Court on the defendants' motion for summary judgment asserting that the complaint does not state a cause of action for retaliatory discharge for violation of the provisions of Tenn. Code Ann. § 50-1-304 (1991).[1]

The evidence submitted in opposition to the motion shows that the plaintiff, Maxine O. Mason, worked in the

---

[1]Tenn. Code Ann. § 50-1-304 states:

(a) No employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

(b) As used in this section, "illegal activities" means activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare.

(c) Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled. . . .

laundry room of a hotel owned and operated by the defendants, Kenneth M. and Laurel Seaton. The laundry room had three doors, two of which were located on the east side of the laundry room and provided access to the area of the hotel designated the convention center. The other door was located on the west side of the laundry room and opened to the outside. Gas fired dryers were located along the wall between the east doors and the west door. These dryers had accidentally caught on fire on previous occasions. The plaintiff had noticed in the laundry room unprotected electrical wiring and uncovered electrical junction boxes, which after her discharge, were found to be in violation of the fire code.

Sometime prior to being discharged from her employment, the plaintiff saw maintenance personnel installing locks on the two doors providing access to the convention center. The plaintiff was told that these two doors would remain locked, and the only means of entering or leaving the laundry room would be the door at the opposite end of the room. The plaintiff expressed to management personnel her concern that she and other laundry room personnel could be trapped in the laundry room in the event a fire started at one of the gas fired dryers. When pleas by the plaintiff and others failed to dissuade management from

its decision to lock the doors at the east end of the laundry room, the plaintiff telephoned the city fire and police department. As the result of the plaintiff's call, police and fire department officers made an investigation at the hotel. At the insistence of the officers, the hotel manager discussed with the plaintiff her safety concerns. As the result, the defendants agreed that one door on the east end of the laundry room would remain unlocked until 7 p.m. of each day.

Subsequently, the defendants were cited for code violations unrelated to the locked doors, for which they paid a penalty. An industrial safety expert testified that locking both doors at the east end of the laundry room would have created a condition dangerous to workers in that room and was a violation of 29 C.F.R. § 1910.36(b)(4) (1996).[2]

The plaintiff's employment was terminated six days after the date on which she protested the defendants'

---

[2]    In every building or structure exits shall be so arranged and maintained as to provide free and unobstructed egress from all parts of the building or structure at all times when it is occupied. No lock or fastening to prevent free escape from the inside of any building shall be installed except in mental, penal, or corrective institutions where supervisory personnel is continually on duty and effective provisions are made to remove occupants in case of fire or other emergency.

29 C.F.R. § 1910.36(b)(4) (1996).

decision to lock the doors and reported her concerns to city officials. Prior to that event, management had expressed no dissatisfaction with the plaintiff's work. No reason was given for her discharge. At no time did the defendants instruct the plaintiff to remain silent regarding the conditions in the laundry room.

## II

The trial court found that whether the plaintiff was discharged from her employment solely for reporting conditions in the laundry room was a disputed issue of material fact. The trial court further found that whether the activity reported by the plaintiff was illegal also was a disputed issue of material fact. However, the court found the plaintiff had failed to submit evidence that she was forced by her employer to violate a law or regulation or to remain silent about the violation, and on that basis, dismissed the complaint.

The Court of Appeals found the record presented a disputed issue of material fact as to every essential element of the cause of action alleged and remanded the case for trial.

## III

Review in this Court is limited to the question of whether the plaintiff failed to present evidence supporting every essential element of a cause of action under Section 50-1-304.  Rule 56.03 of the Tennessee Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter- rogatories, and admissions on file, together with the affi- davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

> [W]hen the facts material to the
> application of a rule of law are
> undisputed, the application is a matter
> of  law for the court since there is
> nothing to submit to the jury to resolve
> in favor of one party or the other.  In
> other words, when there is no dispute
> over the evidence establishing the facts
> that control the application of a rule of
> law, summary judgment is an appropriate
> means of deciding that issue.

Byrd v. Hall, 847 S.W.2d 208, 214-15 (Tenn. 1993). "Construction of [a] statute and application of the law to the facts [are questions] of law."  Beare Co. v. Tennessee Dept. of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993). It follows that the issues raised by the motion for summary

judgment of whether the plaintiff failed to present evidence supporting the essential elements of the cause of action, are questions of law. Consequently, the scope of review is de novo with no presumption of correctness. See Tenn. R. App. P. 13(d); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). "No presumption of correctness attaches to decisions granting [or denying] summary judgments because they involve only questions of law. Thus, on appeal, we must make a fresh determination concerning whether or not the requirements of Tenn. R. Civ. P. 56 have been met." Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn. 1991).

## IV

The defendants' position is that the activities reported by the plaintiff were not illegal within the meaning of the statute, the plaintiff failed to show a causal relationship between her call to the fire and police department and her discharge, and the plaintiff was not instructed to remain silent within the meaning of the statute.

The record clearly supports the concurrent findings by the trial court and the Court of Appeals on the first two

issues.

The testimony of the expert on industrial safety that locking the doors created a dangerous working condition, and the existence of code violations were sufficient evidence of illegal activity to overcome the motion for summary judgment. This evidence is sufficient to show "illegal activity," which is defined as "activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(b). The statute's protection extends to employees who have reasonable cause to believe a law, regulation, or rule has been violated or will be violated, and in good faith report it. See e.g., Melchi v. Burns Int'l Security Services, Inc., 597 F. Supp. 575, 583 (E.D. Mich. 1984).

The evidence also would support a verdict that the plaintiff's employment was terminated solely because she reported the conditions in the laundry room, including the installation of locks, to city officials. In Anderson v. Standard Register Co., 857 S.W.2d 555 (Tenn. 1993), and Conatser v. Clarksville Coca-Cola, 920 S.W.2d 646 (Tenn. 1995), the Court discussed the element of causal relationship between protected conduct and discharge from employment. In

<u>Anderson</u>, the employee was discharged pursuant to a facially neutral absence control policy for absences caused by a work-related injury. She alleged that she was discharged because she asserted a workers' compensation claim for the injury. The employer stated that she was discharged because she was "medically unable to perform her job duties." <u>Anderson v. Standard Register Co.</u>, 857 S.W.2d at 556. In that case, the Court stated that one element of the cause of action for retaliatory discharge for asserting benefits under the workers' compensation law was that "the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment." <u>Id.</u> at 558.

> The burden of proof rests, of course, upon the plaintiff to prove the elements of the cause of action, including a causal relationship between the claim for workers' compensation benefits and the termination of employment. Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury. However, proof of a causal link between the claim for benefits and the employee's discharge imposes upon the employer the burden of showing a legitimate, non-pretextual reason for the employee's discharge.

<u>Id.</u> at 558-59. Finding that the employee had failed to show that the claim for benefits was a factor in the discharge,

the Court affirmed the trial court's grant of summary judgment to the employer.  In Conatser, the employee had worked for four months before sustaining an on the job injury, and was terminated three days after returning to work.  The employer denied that the claim for workers' compensation benefits was a substantial factor in its decision to discharge the employee, claiming that the employee was discharged because he was not physically strong enough to perform the job.  The employee argued that his discharge only three days after returning to work constituted a prima facie showing that the termination of his employment was in retaliation for the assertion of a workers' compensation claim.  The Court stated,

> That evidence is not sufficient.  Even in the quote from Larson's treatise on Workers' Compensation Law relied upon by the employee, proximity in time without evidence of satisfactory job performance does not make a prima facie case.  2A Arthur Larson, The Law of Workmen's Compensation, §68.36(c), p. 13-318 (1994).

Conatser v. Clarksville Coca-Cola, 920 S.W.2d at 648.

As stated in Conatser, proximity in time between the protected act and the discharge is not sufficient to establish a causal relationship.  However, as stated in Anderson, evidence of a causal link between the protected act and the employee's discharge imposes upon the employer the burden of showing the reason for the discharge.  For the context in which the evidence of causation must be viewed, guidance is provided in Byrd v. Hall, where the Court stated, "In making this determination [of whether a genuine issue exists], the court is to view the evidence in a light favorable to the nonmoving party and allow all reasonable inferences in his favor."  Byrd v. Hall, 847 S.W.2d. at 215.

> Appropriate application of the Rule is more likely to be achieved if litigants and courts alike keep in mind that the purpose of a summary judgment proceeding is not the finding of facts, the resolution of disputed, material facts, or the determination of conflicting inferences reasonably to be drawn from those facts.  "The purpose is to resolve controlling issues of law, and that alone."  Bellamy v. Federal Exp. Corp., 749 S.W.2d 31,33 (Tenn. 1988).

Byrd v. Hall, 847 S.W.2d at 216.  Since the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the circumstances give rise to an inference of retaliatory discharge "must be a determination of whether the proffered

admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a [retaliatory] motive.  It is not the province of the summary judgment court itself to decide what inferences should be drawn."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 38 (2nd Cir. 1994).

Here, the essential factor to be determined is the employer's motivation.  Evidence of that motivation is largely within the possession of the defendants. Consequently, where, as in this case, the plaintiff's claim of causation is consistent with the facts and circumstances shown, and the employer chooses to offer no explanation for the employee's discharge, fairness requires that any credible evidence from which the trier of fact could infer causation will defeat the motion for summary judgment.  The plaintiff in this case is not guilty of the "generalizations and conclusions" found to be fatal in Chism v. Mid-South Milling Co., see p. [slip op. at 15], infra.  She affirmatively states that she had never received any reprimand or adverse evaluation, and that she was a good and loyal employee.  This evidence is uncontested.  Under the circumstances of this case, the plaintiff's affidavit is not merely conclusory and must be given some effect.  The evidence of a good work history presented by the plaintiff, in the context of the

facts and circumstances of this case, is sufficient to establish a causal relationship between her reporting of the suspected illegal activity at her place of employment and her discharge.

In summary, the record shows, for the purposes of this appeal, that the plaintiff, without having been directed by her employer to remain silent about illegal activity, was discharged solely because she reported that activity. The final issue, then, is whether there can be a violation of the statute in the absence of a prior directive by the employer. An affirmative response to this question is required by the purpose for which the statute was enacted as well as the language of the statute itself.

Prior decisions by this Court reflect the resolution by the legislature and the Court of the competing interests of employers and employees. "The cause of action for retaliatory discharge defines the balance point between the employment-at-will doctrine and rights granted employees under well-defined public policy." Anderson v. Standard Register Co., 857 S.W.2d at 556; Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822, 824 (Tenn. 1994). Employment-at-will is the fundamental principle controlling the relationship between employers and employees. That principle

was stated in <u>Harney v. Meadowbrook Nursing Center</u>, 784 S.W.2d 921, 922 (Tenn. 1990), as follows:  "The long standing rule in this State is that an employee-at-will may be discharged without breach of contract for good cause, bad cause or no cause at all, without being thereby guilty of legal wrong."  This doctrine recognizes that employers need the freedom to make their own business judgments without interference from the courts. "[A]n employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system."  <u>Clifford v. Cactus Drilling Corp.</u>, 353 N.W.2d 469, 474 (Mich. 1984).  However, even under the common law, an employee is protected from discharge in retaliation for attempting to exercise a statutory or constitutional right, or in violation of a well-defined public policy.  <u>See</u> <u>e.g.</u>, <u>Conatser v. Clarksville Coca-Cola</u>, 920 S.W.2d 646 (Tenn. 1995); <u>Reynolds v. Ozark Motor Lines, Inc.</u>, 887 S.W.2d 822 (Tenn. 1994); <u>Anderson v. Standard Register Co.</u>, 857 S.W.2d 555 (Tenn. 1993); <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896 (Tenn. 1992); <u>Chism v. Mid-South Milling Co.</u>, 762 S.W.2d 552 (Tenn. 1988); <u>Clanton v. Cain-Sloan Co.</u>, 677 S.W.2d 441 (Tenn. 1984).

In <u>Chism v. Mid-South Milling Co.</u>, 762 S.W.2d 552 (Tenn. 1988), the Court rejected a complaint asserting that

the plaintiff was terminated "solely for refusing to participate in, continue to participate in, or to remain silent about illegal activities." <u>Id</u>. at 553.  However, the Court stated,

> We do not intend to disparage such an action.  The Court is generally prepared to uphold such claims in appropriate cases, such as the <u>Clanton</u> case.  Mere generalizations and conclusions, however, will not suffice when a pleading is challenged by a Rule 12 or Rule 56 motion.  Certainly it would have been a simple matter to amend the complaint or to file a specific affidavit if the plaintiff were in fact discharged because he refused to participate in illegal activities, to continue to participate therein or to remain silent about them as stated in his appellate brief.

<u>Id.</u> at 557.

In <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896 (Tenn. 1992), the employee was discharged because of his jury service.  At trial, he was awarded compensatory and punitive damages.  The issue was whether damages were limited to reinstatement and lost wages pursuant to Tenn. Code Ann. § 22-4-108, which states, "No employer shall discharge or in any manner discriminate against an employee for serving on jury duty ...."  In holding that the statutory remedy was not exclusive, the Court reviewed the common law of retaliatory

-15-

discharge, stating, "the tort action of retaliatory discharge [is] available to employees discharged as a consequence of an employer's violation of a clearly expressed statutory policy." Id. at 899.

The case of Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822 (Tenn. 1994), arose prior to enactment of the statute at issue in this case. There the claim for retaliatory discharge was based upon a discharge caused by an employee's refusal to violate the safety provisions of the Tennessee Motor Carriers Act, Tenn. Code Ann. § 65-15-101 (1993). The plaintiffs were discharged because they refused to violate regulations adopted pursuant to the Act which require that the driver of a motor vehicle inspect the vehicle and be satisfied that the vehicle is in safe operating condition before it is operated on a public road. The Court held that,

> The duties imposed by the Act upon
> owners and operators relate directly and
> substantially to the safety of all
> persons using the streets and highways.
> ...
>
> These statutes and regulations
> clearly indicate that the legislature, in
> enacting the Tennessee Motor Carriers
> Act, has declared that the public policy
> of Tennessee includes the protection,
> safety, and welfare of the traveling
> public, including those persons who
> operate motor vehicles regulated by the

> Act. Retaliatory discharge of employees
> for refusing to violate those provisions
> designed to protect the public would
> seriously impair the legislative plan for
> ensuring highway safety.

Id. at 824-25. The Court in Reynolds v. Ozark Motor Lines, found that, under the common law,

> the action [of retaliatory discharge]
> will lie where the employer has violated
> a clear public policy evidenced by an
> unambiguous constitutional, statutory, or
> regulatory provision and the employer's
> violation was a substantial factor in the
> employee's discharge.

Id. at 823.

By enacting Tenn. Code Ann. § 50-1-304, the Public Protection Act of 1990, also commonly known as the "whistle-blower" statute, the legislature extended the common law to protect employees not only from discharge for failing to violate a statute, regulation or rule, but also from discharge for refusing to remain silent about the existence of such violations at their place of employment. The enactment is a statutory recognition that the protection of employees who report violations of laws, regulations, and rules is a part of Tennessee public policy. See e.g., id. at 824. Based on the facts before the Court, a jury could find

that the plaintiff's discharge was a violation of that public policy.

The allegations of the plaintiff's discharge also would constitute a violation of the plain language of the statute. Under the statute, an employer cannot discharge employees for refusing "to participate in, or for refusing to remain silent about, illegal activities" at the work place. Tenn. Code Ann. § 50-1-304(a). The action or conduct for which the statute provides vindication is not, as the defendants insist, disobeying the employer's instructions, but rather is terminating the plaintiff's employment for exercising a right granted by law. It is axiomatic that an employer who is engaged in illegal activity does not want that activity reported to those officials who are responsible for enforcing the law. Illegal activity in a work environment cannot exist without at least the forbearance of the workers. Requiring an explicit instruction by the employer as an essential component of the cause of action would defeat the purpose of the statute. Under the defendants' interpretation of the statute, an employer would never be liable for discharging an employee for reporting illegal activity so long as the employer had not expressly forbade the employee from reporting the activity. As stated by the Court of Appeals, "[s]tatutes are not to be construed so strictly as to defeat

-18-

the obvious intention of the legislature." <u>State v. Netto</u>, 486 S.W.2d 725, 728 (Tenn. 1972).

The literal language of the statute does not submit to the narrow interpretation advanced by the defendants. They focus on the word "refusal" and insist there can be no refusal without an instruction. In the statute, the thing refused is "to remain silent about illegal activity." Remaining silent is the opposite of speaking out, and refusing to remain silent is the same as speaking out. The clear meaning of the statute is that employees have the absolute right to speak out about illegal activities in their workplaces. The declaration by word or deed that one refuses to remain silent about a situation does not imply that there has been an order to remain silent. This statute does not require a showing that the employer instructed the employee to refrain from reporting the illegal activity; consequently, lack of such evidence is not fatal to the cause of action.

V

The judgment of the Court of Appeals is affirmed, and the case is remanded to the trial court for further proceedings.

The costs are taxed to the appellees, Kenneth M. Seaton and Laurel Seaton.

_____
Reid, J.

Concur:

Birch, C.J., Drowota and Anderson, JJ.