**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT JACKSON**

FILED

**February 25, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

|  |  |  |
|---|---|---|
| **VICTOR AUSTIN,** | ) | Shelby County Chancery Court |
|  | ) | No. 105202-1 R.D. |
| Plaintiff/Appellant, | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9805-CH-00145 |
|  | ) |  |
| **SHELBY COUNTY GOVERNMENT** | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Chancery Court of Shelby County at Memphis.
**Honorable Neal Small, Chancellor**

**Sandra C. Isom**, DOWDEN, ZDANCEWICZ & CAMP, Memphis, Tennessee
Attorney for Plaintiff/Appellant.

**Dedrick Brittenum, Jr.**,
**Steven C. Brammer**,
FARRIS, MATHEWS, BRANAN & HELLEN, P.L.C., Memphis, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J.,W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Plaintiff Victor Austin appeals the trial court's summary judgment which dismissed

his claim for wrongful discharge against Defendant/Appellee Shelby County Government. As pertinent to this appeal, Austin's wrongful discharge claim was based upon the provisions of the Tennessee Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Family and Medical Leave Act. We affirm the trial court's judgment based on our conclusion that, even when viewed in the light most favorable to Austin, the evidence fails to support his wrongful discharge claim.

Austin initiated these proceedings in January 1995 by filing a complaint against Shelby County Government and Guy Bates, in his official capacity as the Shelby County Register. In his complaint, Austin alleged that, on January 28, 1994, Bates unlawfully dismissed Austin from his employment as a deputy clerk in the Shelby County Register's Office. Although inartfully drafted, in essence, Austin's complaint asserted that his dismissal violated the Tennessee Human Rights Act and several federal statutes, including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Family and Medical Leave Act. The complaint also asserted that Bates' dismissal of Austin constituted outrageous conduct, but it failed to set forth facts supporting such a claim. Austin later amended his complaint to allege that, in dismissing Austin, the Defendants acted negligently, breached their covenant of good faith and fair dealing, and violated the Shelby County Employees Handbook. Austin's complaint sought compensatory and punitive damages and other relief.

In June 1997, the trial court entered an order dismissing Defendant Guy Bates from this lawsuit. Relying on various affidavits and discovery materials, the remaining defendant, Shelby County Government, subsequently filed a motion for summary judgment as to all claims against it. In December 1997, the trial court entered an order granting the motion and dismissing all claims against the County.

On appeal, Austin challenges only the trial court's dismissal of his claims brought pursuant to the Tennessee Human Rights Act (THRA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Family and Medical Leave Act (FMLA).

Summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." T.R.C.P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the trial court is required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, the trial court, and this court on appeal, "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

With this standard in mind, we first address Austin's FMLA claim. The United States Court of Appeals for the First Circuit recently set forth the background of the FMLA and summarized its provisions:

> "The FMLA was enacted to help working men and women balance the conflicting demands of work and personal life. It does so by recognizing that there will be times in a person's life when that person is incapable of performing her duties for medical reasons." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1024 (7th Cir. 1997).

> The twin purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) & (2). Among the findings prompting the Act was Congress's belief that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). The FMLA seeks to accomplish its purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).

> The FMLA contains two distinct types of provisions. First, it creates a series of substantive rights. Eligible employees "shall be entitled" to up to twelve weeks of unpaid leave per year for any one of the following purposes: when the employee has "a serious health condition that makes [him or her] unable to perform the functions of [his or her] position," 29 U.S.C. § 2612(a)(1)(D); to care for a close family member with such a condition, 29 U.S.C. § 2612(a)(1)(C); or because of the birth, adoption, or placement in foster care of a child, 29 U.S.C. § 2612(a)(1)(A) & (B). . . . Following a qualified absence, the employee is entitled to return to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority. 29 U.S.C. § 2614(a)(1); 29 C.F.R. §§ 825.100(c) (1997). . . .

> These rights are essentially prescriptive, "set[ting] substantive floors" for conduct by employers, and creating "entitlements" for employees. *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997). . . .

> In addition to creating the above entitlements, the FMLA provides protection in the event an employee is discriminated against

for exercising those rights.  *See* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220 (1997).  In particular, "[a]n employer is prohibited from discriminating against employees . . . who have used FMLA leave."  29 C.F.R. § 825.220(c).  Nor may employers "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions."  29 C.F.R. § 825.220(c).  For any such violation, the employer is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith, additional liquidated damages.  29 U.S.C. § 2617(a)(1)(A).  These provisions are essentially proscriptive.

*Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998) (footnotes omitted).

As we see it, the determinative issue in this case is whether the record contains evidence to support Austin's claim that he was entitled to FMLA leave because he suffered from a "serious health condition."  In order to be entitled to FMLA leave based upon this provision, the plaintiff must suffer from a serious health condition which makes him "unable to perform the functions of [his] position."  *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996) (quoting 29 U.S.C. § 2612(a)(1)).  In defending an action brought pursuant to the FMLA, therefore, an employer will be entitled to summary judgment in the absence of lay or medical testimony that the plaintiff's health condition rendered him unable to perform the functions of his job.  *See Brannon v. Oshkosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995); *see also Gudenkauf v. Stauffer Communications, Inc.*, 922 F. Supp. 465, 475-76 (D. Kan. 1996).

The depositions and affidavits filed in this case revealed the following circumstances surrounding Austin's health condition and his absence from work.  Austin suffers from hypertension.  On December 21, 1993, Austin visited the Shelby County employees health clinic.  After examining Austin, the clinic's staff sent him home for the day.  Consequently, Austin returned to the Register's Office and informed administrative assistant Hazel Bills that he needed to leave work that day because of sickness.  Hazel Bills, in turn, informed the Shelby County Register of Deeds, Guy Bates, that Austin needed to leave work to go see his private physician.  After speaking to a clinic nurse, Guy Bates gave his permission for Austin to leave work that day.

In the summary judgment proceedings below, the evidence was undisputed that, at least in the beginning, Bates authorized Austin to stay off work due to his illness.  What was

disputed, however, was whether Austin requested additional time off work due to his hypertension and whether such leave was approved by the Register's Office. According to his affidavit, Austin advised administrative assistant Hazel Bills and another Register's Office employee, Sherrie Morgan, as to why he was still absent from work during the period from December 22, 1993, through January 12, 1994. Austin claimed that, on several occasions, he attempted to advise Bates why he was still absent from work, but Bates would not agree to speak to him.

The testimony of Guy Bates, provided by deposition, tended to support Austin's claim that he had some contact with the Register's Office during his absence. Nevertheless, Joe Reves, the chief administrative officer who handled all personnel matters in the Register's Office, insisted that Austin's absence from work during the period from December 22, 1993, to January 27, 1994, was "unauthorized and unrequested." In an affidavit, Reves stated that neither he, Bates, nor any other Register's Office employee was contacted by Austin with regard to his absences from work on at least ten work days during this period, including December 22, 23, 28, 29, and 31, 1993, and January 5, 7, 10, 11, and 12, 1994.

Although Austin informed office staff, such as Hazel Bills, that he suffered from high blood pressure, according to Joe Reves, Austin never indicated to anyone in the Register's Office that this health condition made him unable to perform the functions of his position. On January 13, 1994, in an apparent attempt to document his absences from work, Austin provided the Register's Office with an FMLA certification form signed by his personal physician. The certification form confirmed that Austin was suffering from hypertension, set forth the drug regimen prescribed by the physician, and indicated that the probable duration of Austin's condition was "undetermined." The form, however, conspicuously failed to indicate in the space provided that it was medically necessary for Austin to be off work for any period of time. In fact, the physician certified that Austin was able to perform the functions of his position. The record does not explain why, after presenting the Register's Office with the FMLA certification form, Austin did not return to work prior to his termination on January 28, 1994.

After reviewing the foregoing evidence, we conclude that the trial court properly granted the County's motion for summary judgment as to Austin's FMLA claim. The record reveals

that Austin initially left work because of unspecified problems[1] associated with his hypertension. The record also reveals that Austin did not return to work prior to his termination from employment over six weeks later. The record fails to reveal, however, that Austin's hypertension rendered him unable to perform the functions of his job so as to entitle him to FMLA leave. Absent from the record is any testimony or sworn statements by Austin as to the hypertension's effect on his ability to work. Moreover, the only medical evidence in the record, the FMLA certification form signed by Austin's personal physician, failed to indicate that Austin's condition would require him to miss any periods of work. In fact, the certification form affirmatively indicated that Austin was able to perform the functions of his job. Under these circumstances, the evidence is insufficient to create a genuine issue of material fact as to whether Austin suffered from a serious health condition which entitled him to FMLA leave.[2] *See Brannon v. Oshkosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (holding that plaintiff's absences were not protected by FMLA where physician failed to advise plaintiff to remain off work and, in fact, provided plaintiff with "certificate to return to work or school"); *see also Gudenkauf v. Stauffer Communications, Inc.*, 922 F. Supp. 465, 475-76 (D. Kan. 1996) (holding that plaintiff's absences were not protected by FMLA, despite her assertions of inability to work, where physician indicated that plaintiff did not request written authorization to take leave and where physician did not note any conditions which would have impaired plaintiff's ability to work).

We next address Austin's contention that the trial court erred in dismissing his claim for wrongful discharge under the THRA and Title VII. Specifically, Austin contends that the trial court erred in granting the County's motion for summary judgment on this claim because the record contains evidence that Bates and the County fired Austin in retaliation for engaging in activity that was protected by the THRA and Title VII.

---

[1]Although the evidence in the record does not make clear what these problems were, Austin's complaint asserted that the clinic staff instructed him to go home because his blood pressure was at a dangerously high level.

[2]In affirming the trial court's dismissal of Austin's FMLA claim, we do not mean to suggest that hypertension or high blood pressure could never be considered a serious health condition. *See, e.g.*, *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92-93 (5th Cir. 1996) (wherein court concluded that high blood pressure could be considered "serious health condition" when plaintiff allegedly missed period of work due to side effects of high blood pressure medication, but court refused to apply FMLA's provisions retroactively).

We conclude that this argument is without merit. The alleged "protected activity" in which Austin engaged was a prior lawsuit wherein Austin challenged his dismissal from the Shelby County Register's Office under the Civil Service Merit System. *See Austin v. Shelby County Gov't*, 761 S.W.2d 298 (Tenn. App. 1988). The dispute in that case began when Guy Bates admonished Austin for failing to button his collar and pull up his tie as required by the Register's Office dress code. *Austin*, 761 S.W.2d at 299. Thereafter, the two men engaged in a yelling match, and Austin was fired for insubordination. *Id*. Austin appealed his discharge to the Shelby County Civil Service Merit Board, which found that Austin was guilty of insubordination but that termination was too severe a punishment. *Id*. at 298. The Board modified Austin's punishment to ninety days suspension without pay and six months probation. *Id*. Although the Chancery Court later reversed the Board's decision, this court ultimately reinstated the Board's ruling. *Id*. at 300. The litigation ended on July 18, 1988, when our Supreme Court denied the County's application for permission to appeal.

The THRA was enacted in 1978 to assure "that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations and housing" and to provide "for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972" and other federal acts. T.C.A. § 4-21-101(a) (1991); *accord Eason v. Memphis Light, Gas & Water Div.*, 866 S.W.2d 952, 955 (Tenn. App. 1993). Like Title VII of the Civil Rights Act of 1964, the THRA prohibits employers from engaging in discriminatory employment practices because of an individual's race, color, religion, sex, or national origin. *See* T.C.A. § 4-21-401(a) (1991); 42 U.S.C.A. § 2000e-2(a) (West 1994).[3]

The THRA also prohibits employers from retaliating against an employee who "has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing" under the THRA. T.C.A. § 4-21-301(1) (1991). Title VII contains a similar prohibition, making it an unlawful employment practice for an employer to discriminate against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C.A. § 2000e-3(a)

---

[3]The THRA includes two additional terms, creed and age, but this difference does not impact our analysis of the issues in this case. T.C.A. § 4-21-401(a) (1991).

(West 1994). Whether a retaliatory discharge claim is brought pursuant to the provisions of THRA or Title VII, a plaintiff must prove the same four elements: (1) that the plaintiff engaged in an activity protected by the statute; (2) that the defendant had knowledge of the plaintiff's exercise of protected activity; (3) that the defendant thereafter took an employment action adverse to the plaintiff; and (4) that a causal connection existed between the protected activity and the adverse employment action. *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 96 (Tenn. App. 1995).

The record in the present case contains no evidence that Austin was fired for engaging in activity protected by the THRA or Title VII. This court's opinion, filed on May 2, 1988, reveals that the nature of Austin's previous litigation was the exercise of his rights under the Civil Service Merit System. *Austin*, 866 S.W.2d at 298-99. The dispositive issues there were whether material evidence existed to support the finding that Austin was insubordinate and whether the Board abused its discretion in modifying the sanctions imposed by the Register's Office. *Id*. at 300. Neither this court's prior opinion nor the record in the present case supports Austin's contention that his participation in the previous litigation constituted activity that was protected by the THRA or Title VII. Accordingly, we can find no evidence that Austin participated in any manner in any investigation, proceeding, or hearing under either statute.

Even if we were to assume, for purposes of this appeal, that Austin has stated a claim for retaliatory discharge by alleging that he was discharged for exercising his rights under the Civil Service Merit System,[4] we still would affirm the summary judgment entered in the County's favor. Regardless of which constitutional, statutory, or regulatory policy an employer is alleged to have violated, in order to maintain an action for retaliatory discharge, a plaintiff must present evidence that his exercise of protected rights was causally related to his subsequent discharge. *Mason v. Seaton*, 942 S.W.2d 470, 473 (Tenn. 1997) (Tennessee Public Protection Act, also known as "whistleblower" statute); *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 558-59 (Tenn. 1993) (Tennessee Workers' Compensation Law); *Newsom v. Textron Aerostructures*, 924 S.W.2d 87, 96 (Tenn. App. 1995) (THRA). A plaintiff may meet this requirement by presenting direct evidence

---

[4] *Cf. Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 445 (Tenn. 1984) (recognizing cause of action for retaliatory discharge where plaintiff was terminated for exercising her rights under Tennessee Workers' Compensation Law).

of a causal link, such as where the employer was acting pursuant to an established policy or where the employer admitted the reason for the termination, or by presenting compelling circumstantial evidence. *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. App. 1992). The plaintiff cannot meet this burden, however, merely by showing that the plaintiff's participation in protected activity was followed by a discharge from employment, even where the proximity in time between the two events is very short. *Mason v. Seaton*, 942 S.W.2d 470, 473 (Tenn. 1997) (six days); *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995) (three days).

During his deposition, Guy Bates testified that he delegated the problem of Austin's continued absence from work to his chief administrative officer, Joe Reves. Bates explained that he made this delegation because he "didn't want to mess with Victor" and he "never could talk with the man." On appeal, Austin contends that these negative comments, coupled with the record of the prior litigation, constituted circumstantial evidence that his discharge from employment in January 1994 was causally related to the 1988 litigation.

We conclude that this evidence was insufficient to support Austin's claim for retaliatory discharge based upon his participation in the prior litigation. The prior litigation was concluded in July 1988, and Austin was not discharged until January 1994, a period of five and one-half years later. In our view, the prior litigation was simply too remote in time to support an inference that the two events were causally related. Moreover, under existing case law, even if the interval between the prior litigation and the subsequent discharge was much shorter, this circumstance alone would not constitute the compelling circumstantial evidence needed to support Austin's retaliatory discharge claim.

As for the negative comments made by Guy Bates in his deposition, even if these comments demonstrated a personal animus toward Austin, we note that the law did not prohibit Bates from disliking his employees. As pertinent to this case, the law merely prohibited Bates from retaliating against his employees for engaging in protected activity. The proof, as developed in the record, fails to support the conclusion that Bates or any other employee of the Register's Office retaliated against Austin for engaging in protected activity.

We are mindful that the party seeking summary judgment has the initial burden of demonstrating that there are no disputed, material facts creating a genuine issue for trial. ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993). We also are mindful that the moving party cannot meet this burden merely by asserting in a conclusory manner that the nonmoving party has no evidence to support its claim. ***Id***. In appropriate cases, however, where the parties have had the opportunity to engage in discovery and to flesh out the relevant facts, a defendant moving for summary judgment may be able to meet this burden by demonstrating that, even if the facts are viewed in the light most favorable to the plaintiff, he still cannot establish an essential element of his claim. ***See Caledonia Leasing & Equip. Co. v. Armstrong, Allen, Braden, Goodman, McBride & Prewitt***, 865 S.W.2d 10, 13 (Tenn. App. 1992); ***see also Horton v. Hughes***, 971 S.W.2d 957, 959 (Tenn. App. 1998) (explaining that failure of proof on essential element of claim necessarily renders all other facts immaterial). We believe this to be such a case.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings. Costs of this appeal are taxed to Austin, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P. J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)