IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2010 Session

## SAUNDRA J. COUNCE, RN v. ASCENSION HEALTH ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 06-C-2137     Hamilton V. Gayden, Jr., Judge**

_____

**No. M2009-00741-COA-R3-CV - Filed March 8, 2010**

_____

The plaintiff, formerly an at-will employee of Baptist Hospital, filed this action asserting that she was wrongfully terminated from her employment. She asserted twelve claims, *inter alia*, retaliatory discharge, age and sex discrimination, sexual harassment, violation of wage and hour laws, and violation of the Americans with Disabilities Act. The trial court summarily dismissed all of the claims. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and RICHARD H. DINKINS, JJ., joined.

Jeffery C. Grass, Plano, Texas, Pro Hac Vice, and Matthew Brothers, Nashville, Tennessee, for the appellant, Saundra J. Counce.

Luther Wright, Jr., and Joycelyn A. Stevenson, Nashville, Tennessee for the appellees, Ascension Health, Seton Corporation, Saint Thomas Health Services and Baptist Hospital.

**OPINION**

The plaintiff, Saundra Counce, a registered nurse, entered into a Registered Nurse Premium Pay Agreement with Baptist Hospital on August 15, 2004 to work at the hospital as a "Critical Care R.N." on an as-needed basis in the "Flex Pool" Department. The Premium Pay Agreement outlined the wages she would receive if and when she was called to work at the hospital; the agreement did not guarantee any work would be available and the agreement was not for a specific term.

As a member of the critical care Flex Pool, Ms. Counce worked on an "as needed" basis, meaning her work was not prescheduled nor was any work assured. Instead, she was called to fill nursing staff shortages in the various hospital units as they occurred.

Pursuant to the pay agreement, Ms. Counce was initially placed on "orientation," during which time she received a wage of $18.00 an hour, and her wage was increased to $28.00 an hour after she completed orientation. Over the next several months Ms. Counce received two performance evaluations, which were favorable in most respects, as she was rated in the "quality performer" range; however, she was not evaluated in all categories as her evaluation did not include areas in which she had not worked. Moreover, there were notations in the evaluations indicating that other aspects of her performance were "discussed," in some instances "in-depth," but the reports do not indicate what was discussed.[1]

On September 13, 2005, a year after she started working at Baptist Hospital, Esther Hoover, the Clinical Nurse Manager, and Terri Graves, Manager of the Flex Pool, met with Ms. Counce to inform her that she was being placed on probation for unsatisfactory work performance. During the meeting Ms. Counce was given an Associate's Conference Report, which outlined the issues leading to her probation, and she was also given performance objectives to improve her performance.[2]

Two months later, on November 2, 2005, Ms. Counce was notified via letter that her employment was terminated. The letter was signed by Ms. Hoover, the same person who hired her for the position. Ms. Counce was informed that she could file an appeal to challenge her termination, which she did on November 8, 2005. In her appeal, Ms. Counce asserted that she had been discriminated against while employed at Baptist Hospital. This was the first time Ms. Counce claimed to be the subject of any form of discrimination. Ms. Counce's appeal was reviewed by Susan Jones, the Associate Chief Nurse Officer. In a letter dated November 15, 2005, Ms. Jones informed Ms. Counce that her termination was upheld based on the finding that Ms. Counce had not demonstrated the necessary proficiency for safe patient care.

---

[1]We find the evaluation process by Baptist Hospital suspect and troubling. The evaluations of Ms. Counce indicate that she was a quality performer, yet the hospital argues in this case that she was not and that many of her deficiencies were not stated in the evaluation report. We also find it troubling that the hospital contends that other areas of her performance were allegedly "discussed" by the evaluators with Ms. Counce yet they are not revealed. Such a protocol is indicative of one being placed on super secret, double probation. Such a practice greatly undermines the hospital's argument that Ms. Counce was not a quality performer.

[2]The report was signed by Ms. Counce to acknowledge that she had received it.

Three days later, on November 18, 2005, Ms. Counce filed a "Disability Grievance" in which she asserted that she was terminated for asking questions about screens and pathways on the computer. The grievance was assigned to Martha Underwood, the Baptist Hospital Section 504 Coordinator. On December 1, 2005, Ms. Underwood wrote Ms. Counce stating that a complete description of the basis for the grievance (including her disability) and any supporting documentation should be provided to the hospital. Ms. Counce replied in a letter dated December 15, 2005 stating that she had difficulty reading a certain font used at Baptist Hospital. On December 27, 2005, Ms. Underwood informed Ms. Counce that there was no evidence that Ms. Counce had informed anyone in Baptist Hospital's Human Resources Department of a physical or mental limitation for which she needed an accommodation and there was no evidence of disability discrimination. Ms. Underwood also noted in the letter that Ms. Counce had not raised the issue of a disability in any of her previous meetings concerning her performance with her supervisors.

Ms. Counce then filed a Discrimination Charge with the Tennessee Human Rights Commission. In her discrimination charge, filed on May 16, 2006, Ms. Counce alleged that Baptist Hospital discriminated against her on the basis of sex, national origin, and age, and that her termination was retaliation. She explained that the retaliation occurred because she had reported a nurse supervisor who had "raised her voice impatiently and angrily in front of the staff," and for suggesting that another nurse needed a drug screen. This was the first time either of these issues had been raised by Ms. Counce. Following a review of Ms. Counce's charge of discrimination, the investigator with the Human Rights Commission issued a recommendation to dismiss the charge, and it was dismissed.

This action against Baptist Hospital and its affiliates, Ascension Health, Seton Corporation and St. Thomas Health Services, was filed *pro se* by Ms. Counce on August 15, 2006.[3] In her complaint, she asserted claims of retaliatory discharge and wrongful termination, negligent hiring, implied contract exception, good faith exception, public policy exception, age discrimination, sexual harassment, victim of favoritism, violation of wage and hour laws, racial discrimination, violations of the Americans with Disabilities Act, and libel. On May 1, 2009, the defendants filed a Motion for Summary Judgment requesting that the trial court dismiss all of the claims. A hearing was held on October 17, 2008, following which the trial court summarily dismissed all of Ms. Counce's claims. Ms. Counce filed a Motion to Alter or Amend the judgment, which the trial court denied on March 13, 2009. This appeal followed.

---

[3]Baptist Hospital is one of five facilities within the Saint Thomas Health Network, which is a member of Ascension Health.

## ANALYSIS

This appeal arises from the grant of summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). This court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). We consider the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Stovall*, 113 S.W.3d at 721; *Godfrey*, 90 S.W.3d at 695. When reviewing the evidence, we first determine whether factual disputes exist. If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W.2d at 215.

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

To make this showing and shift the burden of production, a moving party may: 1) affirmatively negate an essential element of the nonmoving party's claim; or 2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d at 83; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd*, 847 S.W.2d at 215 n.5. Whichever approach the moving party takes, both require more than assertions of the nonmoving party's lack of evidence. *Martin*, 271 S.W.3d at 83-84. In addition, the moving party must present evidence that more than "raises doubts" about the ability of the nonmoving party to prove its claim at trial. *Id.* at 84. The moving party must produce evidence or refer to previously submitted evidence. *Id.*; *accord Hannan*, 270 S.W.3d at 5. Thus, to negate an essential element of a claim, a moving party must refer to evidence that tends to disprove an essential element of the claim made by the nonmoving party. *Martin*, 271 S.W.3d at 84.

Baptist Hospital, as the moving party, had the burden to negate an essential element of Ms. Counce's claims *or* establish that she cannot prove an essential element of her claims at trial. *See Martin*, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d at 5; *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5).

<u>RETALIATORY DISCHARGE</u>

In her Complaint, Ms. Counce asserts a claim of retaliatory discharge, but she fails to state whether her claim is brought pursuant to Tennessee's Public Protection Act or the common law. Recognizing that she was a *pro se* litigant at the time, we will afford some deference to her; therefore, we infer that she presented claims of retaliatory discharge under both the common law and Tennessee's Public Protection Act, Tenn. Code Ann. § 50-1-304.

Under Tennessee's Public Protection Act, a plaintiff must establish: (1) her status as an employee of the defendant employer; (2) her refusal to participate in, or remain silent about, "illegal activities" as defined under the Act; (3) her termination; and (4) an *exclusive* causal relationship between her refusal to participate in or remain silent about illegal activities and her termination in order to sustain a cause of action. *See McLeay v. Huddleston*, No. M2005-02118-COA-R3-CV, 2006 WL 2855164, at *5 (Tenn. Ct. App. Oct. 6, 2006) (citing Tenn. Code Ann. § 50-1-304) (emphasis added).

Tennessee's common law claim for retaliatory discharge has similar elements requiring the plaintiff to show: (1) that an employment-at-will relationship existed; (2) that she was discharged; (3) that the reason for her discharge was that she attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and (4) that a *substantial factor* in the employer's decision to discharge her was her exercise of protected

rights or her compliance with clear public policy. *Id*. at \*6 (citing *Crews v. Buckman Laboratories Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002)). The statutory cause of action and the common law cause of action differ in that under the statute, the employee's protected activity must be the *sole* reason for the discharge, while under the common law cause of action, the employee's action must merely be a *substantial factor* in bringing about the discharge." *Id.* (citing *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 537 (Tenn. 2002)) (emphasis added).

Under the common law and the statute, Ms. Counce must demonstrate that she was retaliated against for her "refusal to assist in the perpetuation of illegal activities or activities which contravene a clear, certain, unambiguous public policy of this state as 'evidenced by an unambiguous constitutional, statutory or regulatory provision,' whether such assistance be by active participation or by silence." *See id.* at \*4 (quoting *Guy*, 79 S.W.3d at 535). Ms. Counce's retaliatory discharge claim is based on assertions that she was terminated by Baptist Hospital for reporting the "disruptive behavior" of a nurse-supervisor, stating that she was "being rude," for recommending that another nurse be drug tested, and for not being part of the crowd, so-to-speak.[4] The activities which Ms. Counce contends were the basis for her discharge fall far short of the legal standard.

Reporting a nurse for what she considered "rude behavior" does not rise to the level of "illegal activity." Nor does a vague accusation that Ms. Counce believed another nurse might need a drug test; especially when there is no basis to form such a belief and when Ms.

---

[4]In the Charge of Discrimination Ms. Counce filed with the Tennessee Human Rights Commission, she stated:

> On August 5, 2005, a new nurse supervisor was rude to me by cutting me off when I was asking her important questions about the particular ICU I had been assigned. She raised her voice impatiently and angrily in front of the staff. I reported her behavior to the Flexpool supervisor, who reported it to the Supervisor of ICU. They apologized for the supervisor and stated that it would not happen again. Everything was wonderful until I reported rude and unkind behavior of a supervisor. On September 7, 2005, in MICU, we were short of nurses because of Hurricane Katrina. The patient load was enough but Diane Cooper was causing unnecessary diversion of my attention to the necessary work, she focused on me and my every move. I noticed she was hyperactive and agitated. On September 19, 2005, I was called in for counseling. Ms. Hoover had audited my charts and found deficiencies as far back as April 2005. I was placed in reorientation. When asked where I would like to go for reorientation, I said SICU or NICU, Ms. Hoover placed me back in MICU. I suggested Ms. Hoo[v]er get a drug screen on Ms. Cooper. On November 3, 2005 I was terminated.

Counce failed to make a proper or timely report as required by Hospital policy.[5] These activities do not rise to the level of a "protected activity" under the common law or under the Public Protection Act.

Had Ms. Counce engaged in a protected activity, which she did not, she would still have to demonstrate under her common law claim that reporting such activity was a "substantial factor" in bringing about her discharge, and that it was the "sole factor" of her discharge under the Public Protection Act.[6] *See McLeay*, 2006 WL 2855164, at *5-6. There is no evidence in this record to establish either, and there is no evidence in the record to indicate that Baptist Hospital's termination of Ms. Counce was based on a reason other than her inadequate work performance.

Baptist Hospital has successfully demonstrated that Ms. Counce will be unable to prove an essential element of her common law retaliatory discharge claim and her statutory claim under the Public Protection Act. Therefore, the trial court's summary dismissal of these claims is affirmed.

IMPLIED AND GOOD FAITH CONTRACT EXCEPTIONS

Ms. Counce claims that Baptist Hospital breached an implied contract and that there was a violation of the "good faith exception," because she was "deprived of the right to make a living in her chosen profession" for which she is entitled to damages for lost wages. We find no basis in fact to support these claims. Moreover, the agreement between Ms. Counce and Baptist Hospital, titled "Registered Nurse Premium Pay Agreement," was just that, a "pay agreement" that outlined the wages she would receive *if* and *when* she was called to

---

[5]In her appellate brief, Ms. Counce contends that she reported a nurse for "verbal abuse" and reported witnessing a nurse taking prescription medication into a closet, yet there are simply no facts to support these allegations in the record; none. As for the alleged incident in which she claims to have reported a nurse-supervisor for suspected drug use, this occurred *after* she was told she was on probation.

[6]A plaintiff must demonstrate a causal link between her termination and the alleged protected activity to sustain a claim under any theory of retaliatory discharge. *See Austin v. Shelby County Gov't*, 3 S.W.3d 474, 480-81 (Tenn. Ct. App. 1999) (citing *Mason v. Seaton*, 942 S.W.2d 470, 473 (Tenn. 1997) (addressing a claim under the Tennessee Public Protection Act)). "A plaintiff may meet this requirement by presenting direct evidence of a causal link, such as where the employer was acting pursuant to an established policy or where the employer admitted the reason for the termination, or by presenting compelling circumstantial evidence." *Id*. (citing *Thomason v. Better-Bilt Aluminum Prods., Inc.*, 831 S.W.2d 291, 293 (Tenn. App. 1992)). It is not sufficient, however, to merely show that "the plaintiff's participation in protected activity was followed by a discharge from employment, even where the proximity in time between the two events is very short." *Id*. (citing *Mason*, 942 S.W.2d at 473; *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 648 (Tenn. 1995)).

work as part of the "Flex Pool." The pay agreement did not guarantee any work to Ms. Counce and it did not assure her that work would be available. To the contrary, the pay agreement expressly provided: "Work availability is not guaranteed." Thus, Ms. Counce has no claim for not being called to work at Baptist Hospital and the trial court acted appropriately to summarily dismiss this claim.

## NEGLIGENT HIRING

Ms. Counce contends that Baptist Hospital is liable for the negligent hiring of Esther Hoover, who, ironically, is the person who hired Ms. Counce. A claim of negligent hiring requires that the plaintiff set forth the following elements: (1) evidence of unfitness for the particular job; (2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others; and (3) evidence that the prospective employee knew or should have known that the historical criminality of the applicant would likely be repetitive. *Gates v. McQuiddy Office Products*, No. 02A01- 9410-CV-00240, 1995 WL 650128, at *2 (Tenn. Ct. App. Nov. 2, 1995) (perm. app. denied April 8, 1996).

The record reveals that Ms. Counce merely contends that "agents" of Baptist Hospital were "untrained" in the Associate's Handbook, and she provided no evidence of any alleged criminality on the part of Ms. Hoover or any other "agent" of Baptist Hospital. The allegations of Ms. Counce do not state or support a claim of negligent hiring. Thus, the trial court properly granted summary dismissal on this claim.

## AMERICANS WITH DISABILITIES ACT

Ms. Counce asserted a claim under the Americans with Disabilities Act. An ADA claim requires a showing that: (1) Ms. Counce was an individual with a disability; (2) she was "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was discharged or suffered an adverse employment action *solely* by reason of her disability. *See Pruett v. Wal-Mart Stores, Inc.*, No. 02A01-9610-CH-00266, 1997 WL 729260, at *10 (Tenn. Ct. App. Nov. 25, 1997) (perm. app. denied May 26, 1998) (citing *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996)).

Ms. Counce states that she has a reading disability; however, Ms. Counce admits that she was never diagnosed with a disability and that she never received any treatment for the alleged disability. Her claim of a disability is based on what an unidentified person told her in high school, in 1968. It is also significant that Ms. Counce admits she never informed Baptist Hospital of this alleged disability and that Baptist Hospital had no way of knowing about this disability in order to accommodate her.

Based upon these facts, Ms. Counce cannot establish that she is an individual with a disability, or that she was discharged by reason of her disability. *See Pruett*, 1997 WL 729260, at \*10. Accordingly, summary dismissal of this claim was appropriate.

## AGE DISCRIMINATION

Ms. Counce, who is over 50 years of age, asserted that she was discriminated against based on her age because younger nurses were offered the Vanderbilt critical care class but she was not, because Ms. Hoover did not offer Ms. Counce a position in an area other than the five intensive care units, and because Ms. Hoover did not offer Ms. Counce the opportunity to resign without fault.

An age discrimination claim requires a plaintiff to establish: "(1) she was at least 40 years of age at the time of the alleged discrimination ("a member of a protected class"); (2) she was subjected to adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a younger person." *Simpson v. Midland-Ross Corp.*, 823 F2d 937, 940 (6th Cir. 1987). If the plaintiff proves a prima facie case, the burden then shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's discharge." *Moore v. Nashville Elec. Power Bd.*, 72 S.W.3d 643, 652 (Tenn. Ct. App. 2001) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329-30 (6th Cir. 1994)). If the employer meets this burden, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason proffered by the employer was not its true reason, but merely a pretext for discrimination. *Id*.

While Ms. Counce's age places her within the protected class and an adverse employment action was taken, Baptist Hospital established that Ms. Counce will be unable to demonstrate that she was disadvantaged in favor of a younger person. Nowhere in the record does it appear that younger nurses were given positions in other areas over Ms. Counce or that younger nurses were given the opportunity to resign without fault. Additionally, Ms. Counce did not know the names or ages of any nurses that were allowed to take the Vanderbilt class, while she was not. If Ms. Counce had established a prima facie case, which she has not, Baptist Hospital articulated a non-discriminatory reason for Ms. Counce's termination and there is nothing to demonstrate that this was pretextual. Therefore, the trial court's summary dismissal of this claim is affirmed.

## OTHER CLAIMS

Ms. Counce also set forth claims for sexual harassment, libel, violation of wage and

hour laws, racial discrimination, and "favoritism."[7] We have conducted a thorough analysis of each of these claims and find that there are no genuine issues of material facts in regards to these claims. For judicial economy, we have chosen to not address these claims in depth in this opinion; nevertheless, the trial court's decision to summarily dismiss each of the remaining claims was correct.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the Appellant, Saundra Counce.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7]A claim of favoritism is not actionable under Tennessee law.