# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 7, 2001 Session

## WILLIAM P. LIVINGSTON, JR. v. MIKE HAYES, ET AL.

### Appeal from the Circuit Court for Hamblen County
### No. 99-CV-78    Richard E. Ladd, Judge

### FILED JULY 23, 2001

### No. E2000-01619-COA-R3-CV

In this appeal from the Circuit Court for Hamblen County, the Plaintiff/Appellant, William P. Livingston, Jr., questions whether the Trial Court erred in entering a summary judgment dismissing his action for libel against the Defendants/Appellees, Mike Hayes, *et al.* We affirm the judgment of the Trial Court and remand for collection of costs below. We adjudge costs of the appeal against Mr. Livingston and his surety.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

William P. Livingston, Jr., Mountain City, Tennessee, Appellant, *Pro Se*[1]

Earl Jerome Melson, Knoxville, Tennessee, for the Appellee, Joel Seal.

Gary Prince, Knoxville, Tennessee, for the Appellees, Mike Hayes and Charles Long.

William O. Foutch, Morristown, Tennessee, for the Appellees, Jack Fishman, Lakeway Publishers, inc., Citizen Tribune and Robert Moore.

### OPINION

---

[1]    William P. Livingston was represented at trial by David L. Leonard, Greeneville, Tennessee, who also filed the appellate brief. Mr. Leonard was allowed to withdraw as counsel before this case was submmitted and oral argument was waived by Mr. Livingston.

This proceeding arises from a libel action filed by the Plaintiff/Appellant, William P. Livingston, Jr., on March 23, 1999, against the Defendants/Appellees, Lakeway Publisher's, Inc., and its subsidiary, the Citizen Tribune, a newspaper published in Morristown, along with Jack Fishman, the publisher and editor of the Citizen Tribune, and Robert Moore, a reporter for the Citizen Tribune and author of the articles which are the subject of Mr. Livingston's complaint. Other Appellees in this case who were named as defendants in the lawsuit in both their individual and official capacities included the following: Mike Hayes, a detective with the Hamblen County Sheriff's Department; Charles Long, the former Sheriff of Hamblen County; and Joel Seal, the Chief of Police for the City of Morristown. Other defendants named in the lawsuit, but who are not parties to this appeal, were David Purkey, the County Executive and Fiscal Officer for the City of Morristown; and J.B. Shockley, the Mayor and Fiscal Officer for the City of Morristown.

On June 17, 1999, after hearing motions to dismiss filed by the defendants, the Trial Court entered an order dismissing Mr. Livingston's complaint as to Mr. Purkey and Mayor Shockley. Based upon the statute of limitations under the Governmental Tort Liability Act, the complaint was also dismissed as to Detective Hayes, Sheriff Long and Chief Seal to the extent that these defendants were sued in their official capacities. The Court did not dismiss Mr. Livingston's complaint as to Lakeway Publisher's, Inc., the Citizen Tribune or Robert Moore (hereinafter referred to as the 'Media Defendants'). Nor did the Court dismiss the complaint as to Detective Hayes, Sheriff Long or Chief Seal to the extent that they were sued in their individual capacities. The Court further ruled that the remaining grounds for the motions to dismiss would be treated as motions for summary judgment and all parties were allowed time to submit supporting affidavits.

On March 1, 2000, based upon arguments of counsel, statements of material fact filed pursuant to T.C.R.P. 56.03 and authorities cited, the Court entered its order for summary judgment in favor of the remaining Defendants and the case was dismissed. On March 31, 2000, Mr. Livingston filed his notice of appeal.

The sole issue presented for our review, which we restate, is whether the Trial Court erred in granting a summary judgment in favor of the Defendants. It is our conclusion that the summary judgment in favor of the defendants was proper and the judgment is affirmed for the reasons set forth below.

In reviewing the decision of a trial court to grant a motion for summary judgment we are governed by a well settled standard. As the decree of the trial court involves purely a question of law, it is not entitled to a presumption of correctness. See *Rayford v. Leffler*, 953 S.W.2d 204 (Tenn. Ct. App. 1997). Our sole duty is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. See *Mason v. Seaton*, 942 S.W.2d 470 (Tenn. 1997).

In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), the Tennessee Supreme Court stated as follows at page 214 with respect to Rule 56:

Rule 56 comes into play only when there is no genuine issue as to any
material fact and the moving party is entitled to a judgment as a matter of law.
Thus, the issues that lie at the heart of evaluating a summary judgment motion
are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material*
to the outcome of the case; and (3) whether the disputed fact creates a *genuine*
issue for trial. (emphasis in original)

The allegedly defamatory statements upon which Mr. Livingston bases his complaint
appeared in two newspaper articles published in the Citizen Tribune on December 17, 1997, and
December 18, 1997, respectively titled "Local Parolee Arrested For Possession Of Loaded Weapon"
and "Former Grainger County Sheriff's Case To Be Heard By Grand Jury". Both articles describe
the arrest and alleged criminal activity of Mr. Livingston, who was at one time Sheriff of Grainger
County. The articles were written following a search of Mr. Livingston's residence and business on
December 11, 1997, by the Hamblen County Sheriff's Department, the Morristown Police
Department and the Third Judicial Task Force acting in conjunction with one another. Among the
items seized as a result of the search were several bottles of prescription medicine, food stamps, a
.22 caliber pistol, 25 rounds of .22 caliber shells, a video cassette recorder, and a television set. At
the time of the search, Mr. Livingston was on parole from a twenty one year prison sentence which
he received in 1985 for drug law violations. As a consequence of the discovery of the .22 caliber
pistol, Mr. Livingston's parole was revoked and he was re-incarcerated. Thereafter, on May 14,
1999, Mr. Livingston was convicted of three counts of drug fraud for offenses committed on
February 3, 1997; February 4, 1997, and June 11, 1997 and he was sentenced to an additional prison
term of six years consecutive to his original sentence.

In his complaint, Mr. Livingston asserts that the following two statements from the Citizen
Tribune article of December 17,1997, are defamatory:

"When authorities searched Livingston's home, they found more than 25 bottles of pills,
some of which had been prescribed to people other than Livingston."

"A television set, video cassette recorder and food stamps were confiscated"

Mr. Livingston further asserts that the following additional statements which appeared in the
Citizen Tribune article of December 18, 1997, are also defamatory:

"[Livingston] headed a diversified criminal organization that included drug trafficking, auto
theft, home burglaries, shoplifting and insurance, food stamp and drug fraud, according to police and
sheriff's department authorities."

"Livingston, a 59 year-old former Grainger County sheriff and non-denominational Christian
minister was the first person arrested in connection with the far-flung criminal enterprise, but he will
not be the last, according to Detective Mike Hayes of the Hamblen County Sheriff's Department."

"Livingston, who was convicted in 1985 for selling and conspiracy to sell Dilaudid, had a loaded .22 caliber pistol when authorities executed a search warrant at his business and residence on Dec. 11"

"'We feel like taking him off the street will stop some shoplifting and also burglaries.' Sheriff Long said. 'We feel like he was fencing (stolen property). It was a big operation. It's a major bust.'"

"'The combined efforts of the three agencies certainly has had a positive impact on stopping a lot of criminal activity related to Mr. Livingston,' the police chief said."

"Livingston has taken 'extreme measures' to hide his assets"

In *Ali v. Moore*, 984 S.W.2d 224 (Tenn. Ct. App. 1998) we noted the well settled law that in order to support a claim for libel, the plaintiff must prove that the statement complained of was false and defamatory and, at page 229 of that case, we cited *Stones River Motors, Inc. v. Mid-South Publ'g Co.,* 651 S.W.2d 713 (Tenn. Ct. App. 1983), as follows:

> The damaging words must be factually false. If they are true, or essentially true, they are not actionable, even though the published statement contains other inaccuracies which are not damaging. Thus, the defense of truth applies so long as the "sting" (or injurious part) of the statement is true.
> ...it is not necessary to prove the literal truth of the accusation in every detail, and that it is sufficient to show that the imputation is substantially true, or, as it is often put, to justify the "gist," the "sting," or the "substantial truth" of the defamation....
> W. Prosser, *Law of Torts*, sec. 116, p. 798 (4th Ed.1971).

Our review of the record convinces us that there is no genuine factual dispute as to the substantial truth of several of the statements which Mr. Livingston maintains are libelous and for that reason, if no other, it is our determination that summary judgment was warranted with respect to those statements. The first statement we examine in that regard appeared in the article of December 17, 1997, and reads as follows:

"When authorities searched Livingston's home, they found more than 25 bottles of pills, some of which had been prescribed to people other than Livingston"

An affidavit filed by Detective Hayes on July 19, 1999, attests that eight bottles confiscated during the search of Mr. Livingston's business and residence were identified as having been prescribed to others. A receipt from the Hamblen County Sheriff's Department, incorporated in and attached to the affidavit, itemizes property seized during the search. The receipt specifically describes eight bottles of medicine and identifies them with persons other than Mr. Livingston. In his affidavit filed on July 29,1999, Mr. Livingston attests that "all of the bottles except for one were prescribed to me based upon my best recollection.".

The 'gist' of the published statement regarding the confiscated bottles is that Mr. Livingston had prescription medicine in his possession which was not prescribed to him. Mr. Livingston denies that this is true as to all but one of the bottles; however, his admission with respect to that one bottle is sufficient to confirm the substantial truth of the statement in question. Additionally, we find that Mr. Livingston's mere assertion of his "best recollection" does not create a genuine issue of material fact when compared to the attestation of Detective Hayes with its supporting documentation.

The next statement also appeared in the article of December 17, 1997, and read as follows:

"A television set, video cassette recorder and food stamps were also confiscated."

In his complaint Mr. Livingston asserts that this statement presents "to any reasonable person that the described property was stolen when in fact it was lawfully owned by the plaintiff". However, the record shows that the described items were confiscated and Mr. Livingston does not contest that they were. As there is no question that the statement complained of is true, we find that summary judgment in favor of the Defendants was proper. We further find that Mr. Livingston's argument that the word 'confiscate' implies the subject property was stolen is without merit. 'Confiscate' means "to seize by or as by authority". See *American Heritage Dictionary* 279 (1973). The word was accurately and appropriately used under the circumstances.

The remaining statements complained of by Mr. Livingston which, in our determination, are true, all appeared in the article of December 18,1997. The first of these was published as follows:

"Livingston, who was convicted in 1985 for selling and conspiracy to sell Dilaudid, had a loaded .22-caliber pistol when authorities executed a search warrant at his business and residence on Dec.11."

Mr. Livingston admits in his complaint that a .22 caliber pistol was found in his apartment during the search, but contends that he was not present when the search was conducted and the pistol was not on his person when it was seized. Again, we look to the substance of the statement which, in this instance, is that Mr. Livingston was in possession of a .22 caliber pistol. It was the possession of this weapon, whether on his person or on his property, that resulted in the revocation of his parole. Under the facts presented, we do not find that it matters that the published statement does not specify that the pistol was found in Mr. Livingston's house and not on his person. Since the statement was substantially true summary judgment in favor of the Defendants was warranted.

The next allegedly libelous statement is attributed to Detective Hayes and states:

"Livingston, a 59 year-old former Grainger County sheriff and non-denominational Christian minister was the first person arrested in connection with the far-flung criminal enterprise, but he will not be the last, according to Detective Mike Hayes of the Hamblen County Sheriff's Department"

Specifically, Mr. Livingston objects to the article's assertion that he "was the first person arrested in connection with the far-flung criminal enterprise...". There is no question that Mr. Livingston was arrested. Furthermore, Mr. Livingston's arrest was connected with 'criminal enterprise' as evidenced by the affidavit filed in support of the search warrant which attests that narcotic drugs had been purchased on his premises and delivered to narcotics officers and that a reliable source had been advised by Mr. Livingston that there was stolen property on the premises. Mr. Livingston was arrested in connection with 'criminal enterprise' in that the attestations of criminal activity prompted issuance of the search warrant, the execution of which led to his arrest. The article correctly states that Mr. Livingston was arrested 'in connection' with a criminal enterprise regardless of whether he was arrested for engaging in a criminal enterprise. It is immaterial whether the enterprise was accurately described as 'far-flung' or whether Mr. Livingston was the first person arrested in connection with it.

The next statement we consider is attributed to Chief Seal as follows:

"'The combined efforts of the three agencies certainly has had a positive effect of stopping a lot of criminal activity related to Mr. Livingston,'"

Here again, we find no genuine issue as to the essential truth of the statement. Detective Hayes' affidavit of July 19, 1999, attests, and Mr. Livingston does not deny, that the search warrant was issued at the behest of the Hamblen County Sheriff's Department, the Morristown Police Department and the Third Judicial District Task Force acting in conjunction and that, as a result of the search, Mr. Livingston's parole was revoked and he was re-incarcerated. Mr. Livingston was subsequently convicted of drug fraud which he was engaged in prior to the search and consequent re-incarceration. The statement is substantially true in that Mr. Livingston's re-incarceration effectively prevented him from continued engagement in drug fraud and, in that sense,' had a positive effect on stopping a lot of criminal activity related to' him.

Of the remaining four statements which Mr. Livingston contends are libelous, the following two are attributed to Sheriff Long:

"'We feel like taking him off the streets will stop some shoplifting and also burglaries.'"

"'We feel like he was fencing (stolen property). It was a big operation. It's a major bust.'"

In his complaint Mr. Livingston asserts that, in fact, none of the property confiscated during the search was determined to be stolen, nor were any charges filed in connection with the bust.

These statements are not actionable as to Chief Seal or Detective Hayes, if for no other reason than that the statements are not attributed to either of these individuals, but only to Sheriff Long. In assessing the liability of Sheriff Long and the Media Defendants we are guided by the criteria set forth at section 580 B of the Restatement (Second) of Torts (1977), adopted by the

-6-

Supreme Court of this State in *Press, Inc. v. Verran*, 569 S.W.2d 435 (Tenn.1978) at page 442 as follows:

> One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
> (a) knows that the statement is false and that it defames the other,
> (b) acts in reckless disregard of these matters, or
> (c) acts negligently in failing to ascertain them.

Mr. Livingston provides no evidence that either Sheriff Long or the Media Defendants knew these statements to be false, acted in reckless disregard of the truth or falsity of the statements or acted negligently in failing to ascertain their truth or falsity. Even if Mr. Livingston's contention that the statements are false is correct, it is our determination that none of the above criteria can be reasonably inferred solely on that basis. The aforementioned affidavit filed in support of the search warrant attests that a reliable confidential source had reported that Mr. Livingston had described certain items of property located on the premises as having been stolen. The affidavit further attests that narcotics officers had purchased narcotic drugs on the premises and that narcotics officer Dan Cox of the Morristown Police Department had received a written statement that stolen property was being traded for drugs on the premises. It is our conclusion that the information set forth in this affidavit provided a reliable foundation for the statements attributed to Sheriff Long and we find no evidence in the record before us showing that he failed to exercise reasonable care in making these statements or that the Media Defendants were negligent in publishing them.

The final two statements to which Mr. Livingston objects state:

"Before William Penn Livingston was arrested Tuesday for a parole violation , he headed a diversified criminal organization that included drug trafficking, auto theft, home burglaries, shoplifting and insurance, food stamp and drug fraud, according to police and sheriff's department authorities."

"In a press release Wednesday afternoon, authorities says (sic) Livingston has taken 'exteme measures' to hide his assets"

Neither of these statements is actionable as to Detective Hayes, Chief Seal or Sheriff Long individually because no proof has been submitted that any of these three Defendants were the source of these statements. As to the Media Defendants, Mr. Livingston again offers no probative evidence which would create an issue of liability under the Restatement criteria, *supra,* and, again, the falsity of the statements does not, of itself, warrant a reasonable inference with respect to those criteria.

For the foregoing reasons the judgment of the Trial Court is affirmed and the case is remanded for collection of costs below. Costs of appeal are adjudged against Mr. Livingston and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE