Christine WOOLEY, Plaintiff,

v.

MADISON COUNTY, TENNESSEE, and Lacy Bond, individually and in his official capacity as Clerk of Madison County Juvenile Court, Defendants.

No. 01–1211 G.

United States District Court,
W.D. Tennessee,
Western Division.

June 7, 2002.

John Marshall Jones, Kenneth P. Jones, Bourland, Heflin, Alarez & Minor, Memphis, TN, for Plaintiff.

Jennifer Craig, James I. Pentecost, Waldrop & Hall, Jackson, TN, Jan Rochester Patterson, McNabb, Holley, Waldrop & Bragorgos, Jackson, TN, for Defendant.

Judy Barnhill, Jackson, TN, pro se.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GIBBONS, District Judge.

Plaintiff Christine Wooley commenced this action against Madison County, Tennessee, her former employer, and Lacy Bond, individually and in his official capacity as Clerk of Madison County Juvenile Court, in the Circuit Court of Madison County, Tennessee on October 30, 2000.[1] On July 17, 2001, defendants removed this case to federal court. Wooley asserts a cause of action under 42 U.S.C. § 1983 for violation of her rights under the First Amendment to the United States Constitution. Wooley also alleges that defendants violated her right to freedom of speech under article I, section 19 of the Tennessee Constitution. In addition, Wooley brings state law claims under the Public Protection Act, Tenn.Code Ann. § 50–1–304, for retaliatory discharge, and under Tenn. Code Ann. § 47–50–109, for procurement of a breach of contract, and asserts common law claims of retaliatory discharge and tortious interference with at-will employment. Wooley seeks compensatory damages, back pay, reinstatement or front pay, punitive damages, attorneys' fees, and costs. The court now considers defendants' motion for summary judgment on all of Wooley's claims.

The following facts are undisputed except where otherwise noted. On April 11, 1990, pursuant to Madison County's Private Acts of 1990, chapter 212, the office of Madison County Juvenile Court Clerk was created by Madison County's legislative body. (Bond Aff. ¶ 3.) During all times relevant to this lawsuit, Bond was the Madison County Juvenile Court Clerk. *Id.* ¶ 4. Upon being named the Madison County Juvenile Court Clerk, Bond took the oath of office as prescribed by Tennessee law. *Id.* Bond states that since taking this oath of office, he has never violated the oath. *Id.* ¶ 5. As Juvenile Court Clerk, Bond has supervisory power over the employees of the Madison County Juvenile Court Clerk's office, including his sister, Auzelda Bond, and his niece, Vivian Cumberlander. *Id.* ¶ 6. As Juvenile Court Clerk, Bond has the power to hire and fire these employees. *Id.*

Wooley was employed by Madison County as an at-will employee in the Madison County Juvenile Court Clerk's Office from September 1991 to July 31, 2000. (Bond Aff. ¶ 10.) Upon her employment with the Juvenile Court Clerk's Office, Wooley was given a copy of the Madison County Em-

---

1. Wooley filed an amended complaint on June 15, 2001, and a second amended complaint on July 10, 2001.

ployee Handbook. *Id.* ¶ 8. The Madison County Employee Handbook provides that "[a]bsence with pay may be granted by the Department Head only and it must be for good cause shown." (Pl.'s Mem. in Opp. to Def.'s Mot.Summ.J.Ex. 6 at 11.) The Madison County Employee Handbook also states that "absence with pay is allowable to employees who, by their continuous service, have earned time off with pay within the limitations and conditions set out in the working rules for employees." *Id.* The sections of the Madison County Employee Handbook governing sick leave and annual leave state the following: "[e]ach full time employee will accrue sick leave at the rate of one day per month"; "sick leave benefits will commence on the first day of each such absence and shall continue for as long as sick leave credit remains"; and "you [the employee] may take only that [annual leave] which you have accumulated." *Id.* at 7–9.

Wooley states that, in 1999, she observed that some employees of the Juvenile Court Clerk's Office, including Auzelda Bond and Cumberlander, were being granted more paid sick leave days and/or paid annual leave days than they had earned and accrued. (Wooley Aff. ¶ 8.) In contrast, Bond avers that he never granted absences with pay in violation of the Madison County Employee Handbook or in violation of state law. (Bond Aff. ¶ 12.) In July or August 1999, Wooley avers that she complained to County Personnel Director Carolyn Ross about defendants' allegedly improper pay practices, but no remedial action was taken. *Id.* ¶ 10. In early 2000, Wooley obtained a copy of a one page list prepared by Robert Nichols, the accountant for the Juvenile Court Clerk's Office, which displayed the annual leave days and sick leave days accrued and used by employees of the Juvenile Court Clerk's Office. *Id.* ¶ 12, Ex. 1. Wooley states that the list verified her observations that defendants were paying certain

employees for more sick leave days and/or annual leave days than these employees had actually earned and accrued. *Id.* ¶ 13.

Specifically, wooley claims that the list revealed that defendants had paid Cumberlander (Bond's niece) for eighty days more sick leave than she had earned and accrued and had paid Auzelda Bond (Bond's sister) for forty-one days more sick leave than she had earned and accrued. *Id.* ¶ 14, Ex. 1. Wooley also asserts that the list revealed that defendants had paid employee JoAnn Harris for forty-nine more days more sick leave than she had earned and accrued. *Id.*

In March 2000, Wooley complained to Madison County Commissioner Jimmy Arnold about defendants' allegedly improper pay practices and showed him the list. *Id.* ¶ 19. Wooley avers that Arnold then contacted other County Commissioners, including Linda Long, a County Commissioner who served on the Madison County Commission's Board of Personnel. *Id.* On May 11, 2000, Wooley prepared a letter documenting her complaint about defendants' allegedly illegal pay practices. *Id.* ¶ 20, Ex. 6. Wooley avers that Long then contacted Bond and questioned him about defendants' pay practices, but Bond responded that it was none of Long's business. *Id.* ¶ 21.

As a result of Wooley's complaints, the Tennessee Bureau of Investigation ("TBI") investigated whether defendants were paying employees of the Juvenile Court Clerk's Office for more sick leave days than these employees had earned and accrued. *Id.* ¶ 22. During its investigation, the TBI interviewed Wooley in May 2000. *Id.* ¶¶ 22–23. Wooley also avers that, in June 2000, she expressed her complaint to Alex Leech, the Mayor of Madison County. *Id.* ¶ 24.

In July 2000, the budget of the Madison County Juvenile Court was cut by

$35,000.00. (Bond Aff. ¶ 16.) Bond states that, after learning of the budget cut, he held a meeting on July 6, 2000 with the Juvenile Court Clerk's Office, at which Wooley was present, to inform the employees of the need for changes in the office due to the budget cut. *Id.* ¶ 17. In contrast, Wooley denies that this meeting was about the budget cut and, instead, asserts that the purpose of the meeting was to inform the employees that he was upset that someone had complained about his pay practices with respect to annual leave pay and sick pay. (Wooley Aff. ¶ 26.) Wooley admits, however, that the budget was mentioned by Bond at the meeting. *Id.* Wooley further avers that Bond did not state that defendants would terminate or lay off any employees as a result of the budget cut. *Id.* ¶ 27.

On July 6, 2000 and July 11, 2000, Bond met with Wooley about the complaints regarding defendants' pay practices. (Wooley Aff. ¶ 26; Bond Aff. ¶ 18.) Bond states that, during these meetings, when questioned about her role in the complaints, Wooley responded that she did not have any knowledge or involvement regarding the complaints. (Bond Aff. ¶ 18.) Wooley avers that during these meetings, Bond told her that once he "pinned in concrete" who made the complaints, he would fire that person. *Id.* ¶¶ 26–30. Jeremy Ballinger, a county employee and bailiff, avers that he witnessed the July 11, 2000 conversation between Bond and Wooley, including Bond's threat of termination to Wooley. (Ballinger Aff. ¶¶ 4–8.) On the afternoon of July 11, 2000, Bond terminated Wooley's employment. (Wooley Aff. ¶ 30.) Bond states that, when he terminated Wooley, he informed her that her termination was due to the Juvenile Court's need to eliminate positions due to budget cuts. (Bond Aff. ¶ 19.) Wooley, however, denies that Bond mentioned the budget cut when he terminated her. (Wooley Aff. ¶ 30.) Wooley avers that, on July 12, 2000, Bond and County Personnel Director Carolyn Ross signed a County Individual Termination Report stating only that Wooley was terminated because her "services were no longer needed." *Id.* ¶ 31, Ex. 8.

Bond attests that he did, in fact, terminate Wooley due to lack of funds in the Madison County Juvenile Court budget. (Bond Aff. ¶ 20.) In contrast, Wooley claims that Bond terminated her solely because she complained about defendants' illegal pay practices with respect to sick leave and annual leave, and because she participated in the investigation regarding defendants' pay practices conducted by the Tennessee Bureau of Investigation. (Wooley Aff. ¶¶ 27–30.)

Pursuant to the Madison County Employee Handbook, following her termination, Wooley had the right to appeal her termination from the Juvenile Court Clerk's Office. (Bond Aff. ¶ 22.) On July 12, 2000, Wooley received a letter from Bond advising her that she had the right to an appeals hearing. (Bond Aff. ¶ 23.) Wooley appealed her termination, and Bond, on appeal, affirmed his decision to terminate Wooley's employment. (Bond Aff. ¶ 24.) After this appeal, Wooley had the right to file a civil lawsuit challenging her dismissal, which she exercised by filing this lawsuit. *Id.* ¶¶ 25–26.

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well

as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). The moving party can meet this burden, however, by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." *Cloverdale Equip. Co. v. Simon Aerials, Inc.,* 869 F.2d 934, 937 (6th Cir.1989). The district court does not have the duty to search the record for such evidence. *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 110–11 (6th Cir.1989); *Street,* 886 F.2d at 1479–80. Respondents have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. *InterRoyal Corp.,* 889 F.2d at 111.

The court first addresses Wooley's First Amendment claim. To establish a *prima facie* case of First Amendment retaliation under 42 U.S.C. § 1983, a public employee must show both that her speech was constitutionally protected and that this protected speech was a substantial or motivating factor in her termination. *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir.1999) (citing *Board of County Comm'rs, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)). Once the public employee establishes a *prima facie* case, the employer must show by a preponderance of the evidence that it would have taken the same adverse action against the employee even in the absence of the protected speech. *Vaughn v. Lawrenceburg Power Sys.,* 269 F.3d 703, 715 (6th Cir.2001).

To establish that her speech was constitutionally protected, a plaintiff must show that she spoke on matters of public concern and that her interest in speaking was not outweighed by the defendants' interest in promoting the efficient operation of the public service which they perform. *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Whether speech addresses a matter of public concern is a question of law. *Williams v. Commonwealth of Kentucky,* 24 F.3d 1526, 1532 (6th Cir.1994). In determining this question, the court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147–148. "In order to conclude that speech addresses a matter of public concern, 'this court must be able to fairly characterize the expression as relating to any matter of political, social, or other concern to the community.'" *Chappel v. Montgomery County Fire Prot. Dist. No. 1,* 131 F.3d 564, 574 (6th Cir.1997) (quoting *Rahn v. Drake Ctr., Inc.,* 31 F.3d 407, 412 (6th Cir.1994).

Courts must distinguish matters of public concern from internal office politics, *Jackson,* 168 F.3d at 909, since speech

made by a public employee upon matters of only personal interest is not protected. *Connick*, 461 U.S. at 147. "The mere fact that public monies and government efficiency are related to the subject of a public employee's speech does not, by itself, qualify that speech as being addressed to a matter of public concern." *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988). Stated another way, a plaintiff's status as a public employee does not, in itself, transform an internal complaint into a matter of public concern. However, allegations made by a public employee regarding the mismanagement and misappropriation of public monies can be a matter of public concern. " 'Public interest is near its zenith when ensuring that public organizations are being operated in accordance with the law,' when 'expos[ing] graft and corruption,' and when 'seeing that public funds are not purloined' or wasted." *Chappel*, 131 F.3d at 576 (quoting *Marohnic v. Walker*, 800 F.2d 613, 616 (6th Cir. 1986)).

■ Viewing the record in the light most favorable to the plaintiff, the court finds that Wooley's speech regarding defendants' pay practices is a matter of public concern. Her complaints that Bond was granting employees more paid leave than they had earned went beyond internal office politics, as these allegations of corruption involved the mismanagement of public monies. *See, e.q., Chappel*, 131 F.3d at 579 (finding that plaintiff's allegations that defendant's favoritism for his family resulted in the payment of unearned benefits and the gross mismanagement of the ambulance district's finances addressed a matter of public concern). Wooley's meth-

od of expressing her grievance, including speaking directly to Madison County officials and submitting a letter detailing her objections to defendants' allegedly improper pay practices, further demonstrates that the purpose of her speech was to expose defendants' allegedly inappropriate management of public monies. Accordingly, the court finds that both the content and context of Wooley's complaints indicate that her speech was a matter of public concern.

■ Since the court has found that Wooley's complaints regarding defendants' pay practices address a matter of public concern, it must consider whether defendants' interest in maintaining an effective and efficient organization outweighs Wooley's interest in her speech. In its motion for summary judgment, defendants assert that Wooley's complaints "impaired the harmony among co-workers and had a detrimental impact on close working relationships with the clerk's office." (Defs.' Mot. Summ.J. at 17). However, defendants do not specify how Wooley's complaints to Madison County officials impacted the operation of the Juvenile Court Clerk's Office, nor do they argue that their interest in effectively operating the Juvenile Court Clerk's Office outweighed Wooley's interest in her speech.[2] Thus, the court concludes that Wooley's complaints regarding defendants' pay practices are constitutionally protected.

■ The court now considers whether Wooley has established that her protected speech was a substantial or motivating factor in defendants' decision to terminate her. Defendants deny that Wooley was

---

2. Moreover, in their motion for summary judgment, defendants undermine any argument that defendants' interest in maintaining an efficient and effective organization outweighs Wooley's interest in her speech by offering Bond's affidavit statements to estab-

lish that the cause of Wooley's termination was not her speech regarding defendants' pay practices, but rather a lack of funds caused by a $35,000.00 budget cut. (Defs.' Mot. Summ.J. at 17.)

terminated because of her complaints, and assert that she was terminated due to a lack of funds caused by a $35,000.00 budget cut. (Bond Aff. ¶ 20). In contrast, Wooley avers that, on July 11, 2000, shortly before terminating her, Bond informed her that once he "pinned in concrete" who made the complaints, he would fire that person. (Wooley Aff. ¶¶ 26–30.) In addition, Wooley presents the affidavit statements of her co-worker, Ballinger, to support this contention. (Ballinger Aff. ¶¶ 4–8.) Viewing the record in the light most favorable to Wooley, the court finds that there exists an issue of material fact as to whether Wooley's protected speech was a substantial or motivating factor in defendants' decision to terminate her. Thus, defendants' motion for summary judgment with respect to Wooley's First Amendment claim is denied.

Wooley also alleges that defendants violated her right to petition the government for redress of grievances as guaranteed by the First Amendment. However, in her pleadings and in her opposition to defendants' motion for summary judgment, Wooley fails to cite any facts in the record supporting this claim. Since Wooley has presented no evidence showing that defendants obstructed her access to state or federal court, the court grants defendants' motion for summary judgment with respect to this claim.

Wooley also alleges a freedom of speech claim under article I, section 19 of the Tennessee Constitution. However, it is well established that Tennessee does not recognize an implied private cause of action for damages based upon violation of the Tennessee Constitution. *Bowden Bldg. Corp. v. Tennessee Real Estate Comm'n,* 15 S.W.3d 434, 446 (Tenn.Ct.App. 1999); *Lee v. Ladd,* 834 S.W.2d 323, 324 (Tenn.Ct.App.1992); *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.1996). Accordingly, defendants' motion for summary judgment

with respect to Wooley's state constitutional claim is granted.

The court now turns to Wooley's claim that she was terminated in retaliation for refusing to participate in and/or remain silent about illegal activities being committed at the Juvenile Court Clerk's Office. Tennessee common law protects employees from being discharged for refusing to violate a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision. *Mason v. Seaton,* 942 S.W.2d 470, 475 (Tenn.1997). The Tennessee Public Protection Act ("TPPA"), Tenn.Code Ann. § 50–1–304, extends the common law to protect employees not only from discharge for failing to participate in violations of clear public policy, but also from discharge for refusing to remain silent about such violations in their workplace. *Mason,* 942 S.W.2d at 475. The TPPA provides that "[n]o employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn.Code Ann. § 50–1–304(a). The objective of this act is to remove an employee from a position of having to choose between reporting workplace illegalities to the proper authorities and remaining employed. *Henderson v. Corrs. Corp. of Am.,* 918 F.Supp. 204, 210 (E.D.Tenn.1996) (citing *Merryman v. Cent. Parking Sys., Inc.,* No. 01A01–9203–CH–00076, 1992 WL 330404 (Tenn.Ct.App. Nov. 13, 1992)); *see also Mason,* 942 S.W.2d at 475 (stating that the act, commonly known as the "whistleblower" statute, gives an employee freedom to speak out about illegalities in the workplace even though it is "axiomatic that an employer who is engaged in illegal activity does not want that activity reported to those officials who are responsible for enforcing the law.")

To establish a *prima facie* case under the TPP[3], the plaintiff must show the following four elements: (1) the plaintiff's status as an employee of the defendants; (2) the plaintiff's refusal to participate in, or to remain silent about, illegal activities; (3) the employer's discharge of the employee; and (4) an exclusive causal relationship between the plaintiff's refusal to participate in or remain silent about illegal activities and the employer's termination of the employee. *Hill v. Perrigo of Tenn.,* No. M2000–02452–COA–R3–CV, 2001 WL 694479, at *3 (Tenn.Ct.App. June 21, 2001) (internal citations omitted). Once the employee has established a *prima facie* case of retaliatory discharge, the burden shifts to the employer to assert a "legitimate, non-pretextual reason for the employee's discharge." *Id.* at *6. If the employer satisfies this burden, the burden shifts back to the employee to prove that the employer's explanation is pretextual. *Id.* In proving pretext, the employee "must present specific admissible facts, which realistically challenge the defendant's stated reasons." *Id.*

As an initial matter, defendants argue that Wooley cannot establish a claim of retaliatory discharge against Bond in his individual capacity because he was not her employer. The TPPA defines "employer" as "the state, or any municipality, county, department, board, commission, agency, instrumentality, political subdivision or any other entity thereof." Tenn.

Code Ann. § 50–1–304(g)(2). Tennessee courts have explicitly held that supervisors, even if they have the exclusive authority to hire and fire employees, are not employers under the TPPA. *Baines v. Wilson County,* No. M2000–00830–COA–R3–CV, 2002 WL 192601, at *6 (Tenn.Ct.App. Feb. 7, 2002) (internal citations omitted). Thus, defendants' motion for summary judgment on Wooley's retaliatory discharge claims against Bond, in his individual capacity, is granted.

With respect to the second element, defendants argue that Wooley has not shown that Madison County committed an illegal activity. The TPPA defines "illegal activities" as "activities which are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn.Code Ann. § 50–1–304(c). An employee can satisfy the second element by showing that she had reasonable cause to believe that her employer had violated a law, regulation, or rule. *Mason v. Seaton,* 942 S.W.2d 470, 472 (Tenn.1997). Wooley contends that she has satisfied this element by showing that she had a reasonable belief that Madison County violated the following Tennessee laws: Tenn.Code Ann. §§ 5–23–101 through 5–23–112; Tenn.Code Ann. §§ 8–31–101 through 8–31–107; Tenn.Code Ann. § 18–2–105; and Tenn.Code Ann. § 18–1–

---

3. To establish a common law claim of retaliatory discharge, the plaintiff must show that the employer violated a clear public policy in discharging an at-will employee. *Robins v. Flagship Airlines, Inc.,* 956 S.W.2d 4, (Tenn. Ct.App.1997) (citing *Chism v. Mid–South Milling Co., Inc.,* 762 S.W.2d 552 (Tenn.1988). However, Tennessee courts have held that a plaintiff must meet the requirements under the TPPA in order to establish a common law claim of retaliatory discharge. *Guy v. Mut. of Omaha Ins. Co.,* No. W1999–00942–COA–R9–CV, 2001 WL 204485, at *9 (Tenn.Ct.App.

July 9, 2001); *see also Crews v. Buckman Laboratories Intern., Inc.,* No. W2000–01834–COA–R3–CV, 2001 WL 687137, at *3 (Tenn. Ct.App. Jun. 18, 2001) (stating that analysis of a common law retaliatory discharge claim would apply equally to a statutory retaliatory discharge claim "since the Tennessee Supreme Court has held this statutory remedy to be cumulative of the common law action.") (internal citations omitted). Thus, the court will analyze both Wooley's common law and statutory claims for retaliatory discharge pursuant to the statutory framework.

103, and that she refused to remain silent about her employer's alleged violations.

 Wooley first argues that Madison County violated Tenn.Code Ann. §§ 5–23–101 through 5–23–112, which require that counties have written personnel policies. Specifically, Wooley asserts that, by granting employees more paid leave than they had earned or accrued, defendants violated § 5–23–104, which requires that each county have a base personnel policy addressing "whether employees are entitled to paid vacation or annual leave, sick leave, or other leave, ... and provisions for maintaining leave records." However, the Madison County Employee Handbook (of which Wooley had a copy) states Madison County's policies regarding sick leave, annual leave, and absence with pay in general. Although Wooley asserts that Bond violated Madison County's personnel policies as stated in the Madison County Employee Handbook, she has presented no evidence that defendants violated Tenn. Code Ann. §§ 5–23–101 through 5–23–112 by failing to have base personnel policies governing paid leave. Thus, the court finds that Tenn.Code Ann. §§ 5–23–101 through 5–23–112 cannot serve as the basis of Wooley's retaliatory discharge claim.

 Wooley next argues that defendants violated Tenn.Code Ann. §§ 8–31–101 through 8–31–107, known as the Tennessee State Employees Uniform Nepotism Policy Act of 1980 ("the Nepotism Act"). The Nepotism Act provides that "no state employees who are relatives shall be placed within the same direct line of supervision whereby one (1) relative is responsible for supervising the job performance or work activities of another relative." Tenn.Code Ann. § 8–31–103. Wooley contends that defendants violated the Nepotism Act by allowing Bond to directly supervise his sister. Defendants assert, however, and that court agrees, that since the Nepotism Act applies only to state employees, Bond, as an employee of Madison County, is not subject to its provisions. Thus, Wooley cannot use defendants' alleged violation of the Nepotism Act to establish the second element of her *prima facie* case.

 Wooley also contends that Bond violated Tenn.Code Ann. § 18–2–105. Tenn.Code Ann. § 18–2–105 provides the following:

Any clerk or clerk and master of any court who, without authority of law, shall use, loan or convert to the clerk's or clerk and master's own use, or otherwise dispose of, any money or property which may have come into the clerk's or clerk and master's hands in the clerk's or clerk and master's official capacity, commits a Class C felony.

Wooley asserts that Bond violated this code provision by using public monies from the Madison County budget to pay employees for unearned absences. Defendants argue that section 18–2–105 applies only to funds which are paid directly to the clerk, such as court costs, child support, and fines, and does not apply to funds that are derived from the budget of Madison County for the operation of the Juvenile Court. However, there is no case law interpreting section 18–2–105, and thus, nothing to support defendants' restrictive interpretation. In contrast, the court reads the plain language of the code provision broadly and finds that the inclusive and unspecific designation of "any money or property which may have come into the clerk's or clerk and master's hands in the clerk's or clerk and master's official capacity" includes money taken from the budget of Madison County to fund the operation of the Juvenile Court.

Since the court finds that section 18–2–105 applies to the use of funds taken from the Madison County budget to fund operation of the Juvenile Court, it must now

consider whether a genuine issue of material fact exists as to whether Bond used these funds improperly in violation of section 18–2–105. In support of her assertion that Bond was misusing Madison County funds by paying employees for unearned leave, Wooley offers evidence, including a list of annual leave days and sick leave days accrued and actually used which she obtained from Nichols, the accountant for the County Juvenile Court Clerk's Office. This list shows that Bond paid Vivian Cumberlander (Bond's niece) for eighty days more sick leave than she had earned and accrued and that he paid Auzelda Bond (Bond's sister) for forty-one more days than she had earned and accrued.

Defendants argue that Wooley's evidence does not establish a violation of section 18–2–105, since Bond had authority under the Madison County personnel policy, enacted pursuant to Tenn.Code Ann. §§ 5–23–101 through 5–23–112, to allow paid leave for good cause shown. Specifically, defendants point to the Madison County Employee Handbook, which states that "[a]bsence with pay may be granted by the Department Head only and it must be for good cause shown." (Pl.'s Mem. in Opp. to Def.'s Mot.Summ.J.Ex. 6 at 11.) Defendants assert that, as a result of this language, Bond had the discretion to grant his employees paid leave even though it was unearned. The court, however, disagrees with defendants' characterization of Madison County's personnel policy. In the paragraphs directly preceding the sentence quoted by defendants, the Madison County Employee Handbook states that "absence with pay is allowable to employees who, by their continuous service, have earned time off with pay within the limitations and conditions set out in the working rules for employees." *Id.* Furthermore, the sections of the Madison County Employee Handbook governing sick leave and annual leave state the following: "[e]ach full time employee will accrue sick leave at the rate of one day per month"; "sick leave benefits will commence on the first day of each such absence and shall continue for as long as sick leave credit remains"; and "you [the employee] may take only that [annual leave] which you have accumulated." *Id.* at 7–9. Reading the Madison County Employee Handbook as a whole, the court finds that, at the very least, there exists a question of fact as to whether Bond was authorized to grant Cumberlander eighty days more sick leave than she had earned and accrued and Auzelda Bond forty-one days more sick leave than she had earned and accrued. Thus, the court finds that Wooley has created a genuine issue of material fact as to whether she has established the second element of her *prima facie* case of retaliatory discharge by showing that Bond engaged in illegal activity in violation of Tenn.Code Ann. § 18–2–105.

■ As a fourth basis for the second element of her *prima facie* case, Wooley argues that Bond violated his oath of office mandated by Tenn.Code Ann. § 18–1–103, which states in relevant part: "Each clerk of a court must also, before entering on the duties of the office, take an oath to support the constitutions of the United States and of this state, and to execute the duties of the office without prejudice, partiality, or favor, to the best of the clerk's skill and ability;...." Specifically, Wooley asserts that Bond violated his oath of office by showing partiality and favor to his relatives in granting paid, unearned leave. Based on Wooley's evidence that Bond paid his niece for eighty days more sick leave than she had earned and accrued and his sister for forty-one days more of sick leave than she had earned and accrued, the court concludes that there exists a question of material fact as to whether Bond violated Tenn.Code Ann. § 18–1–103. Thus, Bond's alleged violation of his oath of office can also serve as a basis for the

second element of Wooley's *prima facie* case of retaliatory discharge.

■ Since the parties do not dispute that Wooley was terminated, the court now considers whether Wooley has established the fourth element of her *prima facie* case—an exclusive causal relationship between her complaints about defendants' allegedly illegal activities and her discharge. To establish that her complaints were the sole cause of her termination, Wooley offers evidence that, on July 6, 2000 and July 11, 2000, Bond threatened that once he determined for certain the identity of the employee who had complained about his granting of paid leave, he would terminate that individual. (Wooley Aff. ¶¶ 26–33; Ballinger Aff. ¶¶ 4–8.) Later on July 11, 2000, Bond terminated Wooley. (Bond Aff. ¶ 19.) Defendants argue that Wooley cannot establish that her complaints were the sole cause of her discharge since her termination was due to a budget cut of $35,000.00. However, given Wooley's direct evidence, including the affidavit statements of a co-worker who witnessed the exchange between Bond and Wooley, that Bond terminated her because of her complaints about his pay practices, the court finds that there exists a question of fact as to whether Wooley's complaints were the exclusive cause of her discharge.

■ Since the court finds that Wooley has established a *prima facie* case of retaliatory discharge, the burden shifts to defendants to offer a legitimate reason for Wooley's discharge. Defendants have satisfied this burden by asserting that Wooley's discharge was due to the Madison County Juvenile Court's lack of funds resulting from a $35,000.00 budget cut. In support of this explanation, Bond avers that he informed Wooley when she was terminated that her discharge was due to the Madison County Juvenile Court's need to eliminate positions due to budget cuts. In addition, defendants point to the July

12, 2000 letter signed by Bond and County Personnel Director Carolyn Ross, which stated that Wooley had been terminated because "her services were no longer needed." (Bond Aff. ¶ 19; Pl.'s Resp. to Defs.' Mot.Summ.J.Ex. 8.)

■ Since defendants have presented a legitimate reason for Wooley's discharge, Wooley must prove that defendants' explanation is pretextual. To show pretext, Wooley avers that Bond did not tell her that her termination was due to a lack of funds at the termination. In addition, Wooley offers the same direct evidence she relied upon to establish exclusive causal connection—her and Ballinger's affidavit statements that, on the day of Wooley's discharge, Bond threatened her that he would terminate the employee who had complained about his pay practices once he was certain of that individual's identity. Viewing the evidence in the light most favorable to Wooley, the court finds that there exists a question of fact as to whether defendants' stated reason for Wooley's discharge—a lack of funds due to a budget cut—was pretextual. Accordingly, the court denies defendants' motion for summary judgment on Wooley's common law and statutory retaliatory discharge claims against Madison County.

■ The court now turns to Wooley's claim against Bond for tortious interference with at-will employment. Wooley contends that Bond tortiously interfered with her employment with Madison County by terminating her in retaliation for the complaints she had made about his pay and leave practices. An agent or employee may be held liable for tortious interference with at-will employment only if he is not acting within the scope of his duties and in furtherance of the interests of his employer. *Forrester v. Stockstill,* 869 S.W.2d 328, 333 (Tenn.1994). Wooley does not dispute that, as Madison County Court Clerk, Bond's supervisory duties included

hiring and firing employees. Since Wooley has failed to present evidence showing that Bond was acting outside the scope of his duties as Court Clerk when he terminated her, the court grants defendants' motion for summary judgment as to Wooley's claim for tortious interference with at-will employment.

 The court next addresses Wooley's claim for procurement of a breach of contract in violation of Tenn.Code Ann. § 47–50–109. Tenn.Code Ann. § 47–50–109 provides for an award of treble damages upon a clear showing that the defendant induced or procured the breach of contract. *Leemis v. Russell*, No. W1999 00352–COA–R3–CV, 2000 WL 705772, at *2 (Tenn.Ct.App. May 24, 2000). To recover for procurement of a breach of contract, a plaintiff must establish each of the following seven elements: (1) the existence of a legal contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intention to induce or procure a breach of the contract; (4) that the defendant acted maliciously; (5) a breach of the contract; (6) that the act complained of was the proximate cause of the breach of the contract; and (7) damages resulting from the breach of the contract. *Id.* "In Tennessee, unless there is a contract of employment for a definite term, a discharged employee may not recover against an employer for breach of contract because there is no contractual right to continued employment." *Forrester*, 869 S.W.2d at 330. As an at-will employee of Madison County, Wooley had no contractual right to continued employment. Since Wooley has failed to establish that there existed a legal contract between her and her employer, which is a necessary

element of her claim for procurement of a breach of contract, the court grants defendants' motion for summary judgment with respect to this claim.

In summary, the court grants defendants' motion for summary judgment with respect to Wooley's retaliatory discharge claims against Bond as well as her claims for violation of article 1, section 19 of the Tennessee Constitution, violation of her right to petition the government for redress of grievances under the First Amendment, procurement of a breach of contract, and tortious interference with at-will employment.[4] The court denies defendants' motion for summary judgment on Wooley's First Amendment claims against both defendants and her claims against Madison County for retaliatory discharge under common law and Tenn.Code Ann. 50–1–304.

IT IS SO ORDERED.

---

4. In their motion for summary judgment, defendants argue that Wooley cannot seek punitive damages against Madison County because of its status as a municipality. (Mem. in Supp. of Defs.' Mot.Summ.J. at 13.), However, in its second amended complaint, Wooley states that she seeks punitive damages only against Bond, in his individual capacity. (Sec.Am.Compl.¶¶ 49–52.)