IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 26, 2015 Session

## DUFF BRUMLEY v. THE CITY OF CLEVELAND

**Appeal from the Circuit Court for Bradley County**
**No. V11616     Hon. W. Neil Thomas, Judge[1]**

---

**No. E2014-02213-COA-R3-CV-FILED-OCTOBER 15, 2015**

---

A former police officer with the City of Cleveland brought this retaliatory discharge action, alleging that he was fired for reporting his superior for the crime of official misconduct and official oppression. During the pendency of the retaliatory discharge action, the officer's termination was upheld in the administrative appeal process. A panel of this court affirmed the administrative decision. Thereafter, the City of Cleveland moved for summary judgment in this action, arguing, in pertinent part, that the claim was barred by res judicata and collateral estoppel because the issues raised were addressed in the administrative appeal of the termination. The trial court agreed and dismissed the action. We reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

W. Gerald Tidwell, Jr., W. Adam Izell, and Todd A. Davis, Chattanooga, Tennessee, for the appellant, Gregory Herbert Helton.

Emily C. Taylor and Benjamin K. Lauderback, Knoxville, Tennessee, for the appellee, the City of Cleveland.

---

[1] Sitting by interchange.

# OPINION

## I.     BACKGROUND

Duff Brumley ("Plaintiff") was employed by the City of Cleveland ("the City") as a police officer until his termination on August 24, 2010.  In a prior appeal, this court recounted the circumstances surrounding the termination as follows:

> In 2010, while working as a detective in the narcotics unit, [Plaintiff] was approached by two members of the 10th Judicial District Drug Task Force ("DTF"), who informed him of their suspicions that the DTF Director, Mike Hall, might be abusing prescription medications.  Later, according to [Plaintiff], a Criminal Court judge told him that Director Hall appeared to be under the influence while obtaining the judge's signature in chambers. [Plaintiff] decided to investigate the matter and obtained personal information, including the social security number and date of birth, for Director Hall and two other DTF agents through the Criminal Justice Portal database.

> [Plaintiff] gave Director Hall's personal information to pharmacist Mike Birdwell, his friend and neighbor, and asked Mr. Birdwell to check the Prescription Monitoring Program ("PMP") database to determine if Director Hall's prescription drug purchases were suspicious.  Mr. Birdwell passed the information to two other pharmacists because he did not have access to a computer to check the PMP database.  The pharmacists checked Director Hall's prescription drug purchase history and determined that it did not raise any suspicion of illegal activity.  Mr. Birdwell supplied [Plaintiff] this information and according to [Plaintiff], he then ended his investigation of Director Hall.

> On June 22, 2010, District Attorney General R. Steven Bebb sent Cleveland Police Chief Wes Snyder a letter stating, inter alia, the following:

>> Please be advised that we have become aware of an incident involving [Plaintiff]. It appears that [Plaintiff] illegally instigated a search of the Patient Monitoring Database for information on Mike Hall, the Director of the 10th Judicial Drug Task Force. [Plaintiff's] actions have been confirmed through an investigation by the Tennessee Bureau of Investigation.

> Please accept this letter as notice that from this date forward the District Attorney General's Office will not accept any case files for prosecution from [Plaintiff].... Please also accept this letter as a request that an internal investigation be commenced by the Cleveland Police Department into these matters as soon as possible.

On June 23, 2010, Chief Snyder assigned Detective Brian Pritchard to conduct an Internal Affairs ("IA") investigation of [Plaintiff]. Following the IA investigation, Det. Pritchard concluded that [Plaintiff's] actions violated Cleveland Police Department policies and state law. On August 17, 2010, Chief Snyder notified [Plaintiff] that his employment was terminated effective August 24, 2010. The City of Cleveland provided the following grounds for its termination decision: (1) [Plaintiff's] "failure to notify CID Lieutenant of [his] investigation of Mike Hall and failure to generate a departmental case number"; (2) misuse of the Criminal Justice portal to obtain the personal information of Mike Hall and three other persons, and in disclosing Mike Hall's personal information to Mike Birdwell; (3) violation of Tenn. Code Ann. § 39-16-404; (4) violation of Tenn. Code Ann. § 53-10-306; (5) his investigation of the DTF director was "outside [the] scope of his job" and "should have been forwarded to a higher authority, such as the TBI, DEA, FBI, or DA's office"; (6) failure to follow Cleveland Police Department policies; and (7) two letters from District Attorney General Bebb stating, among other things, that "Detective Brumley will not be called as a witness by the State of Tennessee in any criminal proceeding in this District" such that he "has no credibility with this Office."

*Brumley v. City of Cleveland*, No. E2012-00002-COA-R3-CV, 2013 WL 1737860, at *1-3 (Tenn. Ct. App. Apr. 23, 2013) ("*Brumley II*")[2] (internal footnotes omitted).

Janice Casteel, the City Manager, affirmed the termination. Plaintiff filed an application for writ of certiorari with the circuit court and submitted new evidence for the court's consideration. The new evidence was summarized by this court as follows:

---

[2] Plaintiff also appealed a denial of an application for writ of certiorari resulting from an unrelated employment decision in 2010. *See Brumley v. City of Cleveland*, No. E2010-00840-COA-R3-CV, 2011 WL 1326239 (Tenn. Ct. App. Apr. 7, 2011) ("Brumley I").

[Plaintiff's] offer of proof consisted of the following: (1) his own live testimony, including his recollection of the events surrounding his investigation of Director Hall; (2) the live testimony of six other witnesses, including pharmacist Birdwell, four former or current law enforcement officers, and the City Attorney; (3) the deposition testimony of Kim Harmon, a Tennessee Bureau of Investigation ("TBI") agent; (4) documentation from two earlier and generally unrelated criminal cases in which [Plaintiff] was involved as a witness; and (5) documentation from an earlier TBI investigation of Chief Snyder.

Our review of the administrative record and the testimony in the offer of proof establishes that very few, if any, of the facts of [Plaintiff's] investigation that led to his termination are disputed. [Plaintiff's] argument is that his investigation was properly conducted and that he did nothing wrong or inappropriate. He therefore contends that the City should not have terminated his employment. For instance, in an effort to discredit the allegation that he should have informed his superior officer of his self-initiated investigation of Director Hall and should have opened a case file, [Plaintiff] presented the testimony of Matt Jenkins, a Cleveland police officer, and Abe Hayes, a retired Cleveland police officer, who each testified that it was not common practice for officers to open a case file and inform their superior officers of criminal investigations that are in the early preliminary stage.

[Plaintiff] also offered the deposition testimony of Kim Harmon, a TBI agent who trained other law enforcement agents to investigate prescription abuse cases. Agent Harmon testified that at the time [Plaintiff] conducted the investigation of Director Hall, the TBI was training agents that it was proper and legal to ask a pharmacist to check the PMP database to see if a person's prescription drug history raised any suspicion of criminal activity. Agent Harmon further testified that shortly after [Plaintiff's] investigation, however, it was determined that such an informal inquiry without a court order would be improper and unlawful. At the administrative appeal hearing before City Manager Casteel, Chief Snyder stated that neither Agent Harmon nor anyone else from the TBI had ever provided the Cleveland Police Department with any training regarding the PMP database. Agent Harmon's proffered testimony thus bears limited relevance to the issue of whether the City Manager acted arbitrarily. Det. Pritchard testified at the administrative appeal hearing that "according to the Board of Pharmacy's attorney, you cannot ask a pharmacist or initiate

conversation with a pharmacist to indulge or look into that database. It
must be done by a court order signed by the DA and the judge."

*Brumley II*, 2013 WL 1737860, at \*5-6. Following a hearing on November 17, 2011, the
trial court excluded the new evidence. The trial court denied the petition and upheld the
City Manager's decision, finding that the grounds for termination were supported by
material evidence, with the exception of the allegation that Plaintiff violated Tennessee
Code Annotated section 39-16-404. Plaintiff appealed the denial of the writ to this court,
which held that the trial court properly excluded the new evidence because the evidence
was "irrelevant to the pertinent question before the court," namely whether the City
Manager acted arbitrarily or capriciously in upholding the termination. *Id.* at \*6. This
court further held that the City Manager's decision was supported by material evidence in
the record and that the City Manager had not acted arbitrarily or capriciously in
upholding the termination. *Id.* at \*7.

Before the trial court denied the petition for a writ of certiorari and well before this
court issued its opinion in *Brumley II*, Plaintiff filed this action against the City on
August 23, 2011. He asserted causes of action for common law retaliatory discharge;
retaliatory discharge under the Tennessee Public Protection Act ("the TPPA"), codified at
Tennessee Code Annotated section 50-1-304 and commonly referred to as "the
Whistleblower Act"; and violation of his rights pursuant to the First Amendment of the
United States Constitution.[3] He alleged that he was fired for reporting Police Chief Wes
Snyder for the crime of official misconduct and official oppression. Meanwhile, this
court issued its opinion in *Brumley II* on April 23, 2013.

On January 30, 2014, the City sought summary judgment dismissal, alleging that it
was immune from suit for common law retaliatory discharge and that res judicata and
collateral estoppel barred the TPPA claim because the legality of his termination had
been litigated in *Brumley II*. The City also asserted that dismissal of the TPPA claim was
appropriate because Plaintiff could not establish the exclusive causal relationship
between the protected activity and his termination or that the activity complained of was
illegal. Plaintiff conceded that the City was immune from suit for common law
retaliatory discharge. However, he asserted that res judicata and collateral estoppel did
not operate to bar his TPPA claim. He argued that the legality of his termination in light
of the TPPA was never fully addressed or litigated because review of the hearing was
limited to the parameters of the common law writ of certiorari.

---

[3] The case was initially removed to federal court in light of the federal claim. The case was remanded
following Plaintiff's voluntary dismissal of the federal claim.

The court granted the motion for summary judgment, finding that the TPPA claim was barred by the doctrine of res judicata in light of this court's decision in *Brumley II*. In so holding, the court stated,

> Plaintiff complains that in the prior proceeding, he was not afforded fairness and due process. No such assertion, however, was made in those proceedings, nor was a simultaneous retaliatory discharge action filed which could have been consolidated with that proceeding.

This timely appeal followed the denial of post-trial motions.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.    Whether the trial court erred in granting summary judgment based upon the related doctrines of res judicata and collateral estoppel.

B.    Whether the City is entitled to summary judgment because Plaintiff cannot establish the essential elements of his claim.

## III.    STANDARD OF REVIEW

The summary judgment standard as applied to retaliatory discharge actions was amended on June 10, 2011. *See* 2011 Tenn. Pub. Acts 461. The amendment, now codified at Tennessee Code Annotated section 50-1-304(f), functionally overruled the retaliatory discharge summary judgment analysis in *Kinsler v. Berkline, LLC*, 320 S.W.3d 796 (Tenn. 2010) and *Gossett v. Tractor Supply Co.*, 320 S.W.3d 777 (Tenn. 2010) and provided an elaborate framework concerning the allocation of the burden of proof and the order of presentation of proof for cases that accrued prior to June 10, 2011. *Bige v. City of Etowah*, No. M2013-01771-COA-R3-CV, 2014 WL 6888857, at *4 (Tenn. Ct. App. Dec. 4, 2014) (discussing the applicability of the amendment); *see also* 2011 Tenn. Pub. Acts 461 ("This act shall take effect upon becoming a law, the public welfare requiring it and shall apply to all causes of action accruing on or after such effective date"). Plaintiff's cause of action in this case accrued no later than August 24, 2010, the date his employment was terminated; therefore, section 50-1-304(f) is inapplicable.

This action was initiated on August 23, 2011; accordingly, the dispositive summary judgment motion is governed by Tennessee Code Annotated section 20-16-101, which provides,

In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:

> (1)    Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2)    Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101.

A trial court's decision to grant a motion for summary judgment presents a question of law, which we review de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 417 (Tenn. 1997). We must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox Cnty. Bd of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV.    DISCUSSION

### A.

Plaintiff argues that the trial court erred in summarily dismissing his claim when he was never afforded an opportunity to establish that the City terminated his employment solely for his refusal to remain silent about an illegal activity. He claims review in *Brumley II* was limited to whether the City Manager exceeded her jurisdiction or acted illegally, arbitrarily, or capriciously in upholding his termination. The City responds that Plaintiff should be precluded from challenging the legality of his termination and contesting the validity of the reasons proffered by the City in justification for his termination because the issue was raised, litigated, and decided in *Brumley II*.

Res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues that were or could have been litigated in the former suit. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009) (citing *Massengill v. Scott*, 738 S.W.2d 629 (Tenn. 1987)). "[C]ollateral estoppel (also known as issue

preclusion) has been described as an extension of the doctrine of res judicata (also known as claim preclusion)." *Id.* (citing *Massengill*, 738 S.W.2d at 631-32). Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action as to issues which were actually litigated and determined in the former suit. *Id.* The party invoking the doctrine of collateral estoppel must demonstrate that

> 1.      [T]he issue sought to be precluded is identical to the issue decided in the earlier suit;
>
> 2.      [T]he issue sought to be precluded was actually litigated and decided on the merits in the earlier suit;
>
> 3.      [T]he judgment in the earlier suit has become final;
>
> 4.      [T]he party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and
>
> 5.      [T]he party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the new issue now sought to be precluded.

*Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998) (internal citations omitted).

Plaintiff's administrative appeal of his termination was limited by the procedures applicable in a certiorari review action. "[T]he primary consequence of a determination that a party must seek judicial review through the common law writ of certiorari procedure is that the trial court must apply a limited standard of review to decisions already made by administrative officials, rather than address the issue de novo as the initial decision maker." *State ex rel. Moore & Assocs., Inc. v. West*, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005). Furthermore,

> Reviewing courts may grant relief only when the board or agency whose decision is being reviewed has exceeded its jurisdiction or has acted illegally, arbitrarily, or fraudulently.
>
> Review under a common-law writ of certiorari does not extend to a redetermination of the facts found by the board or agency whose decision is being reviewed. The courts may not (1) inquire into the intrinsic correctness of the decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the board or agency. However, they may review the

record solely to determine whether it contains any material evidence to support the decision because a decision without evidentiary support is an arbitrary one.

*Leonard Plating Co. v. Metro. Gov't of Nashville and Davidson Cnty.*, 213 S.W.3d 898, 903-04 (Tenn. Ct. App. 2006) (internal citations and footnotes omitted).

     *Brumley II* involved the administrative appeal of Plaintiff's termination. Certiorari review was limited to whether the *City Manager* exceeded her jurisdiction or acted illegally, arbitrarily, or fraudulently in upholding the termination. Notably, Plaintiff never argued that the City Manager exceeded her jurisdiction or acted illegally or fraudulently. *Brumley II*, 2013 WL 1737860, at *4 ("[Plaintiff] does not argue that the City Manager's action exceeded her jurisdiction or that it was illegal.") He argued that her decision was arbitrary because he was unfairly denied the opportunity to present evidence to rebut the purported reasons for his termination. This court held that Plaintiff never attempted to present the proffered evidence and that such evidence was irrelevant to the issue of whether the City Manager's decision was supported by material evidence. Citing *Brumley I*, this court defined material evidence as "relevant evidence that a reasonable person would accept as adequate to support a rational conclusion." *Brumley II*, 2013 WL 1737860, at *7. In holding that the decision was supported by material evidence, this court noted that it was not to question the "wisdom" of the decision or to substitute its judgment for that of the City Manager. *Id.* This court never considered whether the purported reasons for Plaintiff's termination may have been pretextual and specifically rejected evidence in support of that assertion as irrelevant.

     The cause of action at issue in this case is a retaliatory discharge claim. The crux of the issue in this action is whether viewing the evidence in the light most favorable to Plaintiff and resolving all factual inferences in his favor, the City successfully demonstrated that Plaintiff cannot establish that his employment was terminated solely for his refusal to remain silent about an illegal activity. Tenn. Code Ann. § 50-1-304(b); *Bige*, 2014 WL 6888857, at *8. The issue before the court in *Brumley II* and in this action is similar but not identical. Accordingly, the trial court erred in refusing to consider the retaliatory discharge claim when the cases involved a different cause of action and a different issue. This conclusion does not end our inquiry because the City argued, alternatively, that summary judgment was appropriate because Plaintiff cannot establish the essential elements of his claim. This court "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n. 18 (Tenn. Ct. App. 2004); *see also Bige*, 2014 WL 6888857, at *8 (quoting *Brentwood* for the same proposition under similar circumstances).

B.

Tennessee follows the "at-will" employment doctrine. At-will employment means that employment contracts of indefinite duration are terminable at the will of the employer or employee for any or no cause. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534-35 (Tenn. 2002). Nonetheless, there are important restrictions on an employer's right to terminate an employee. *Id.* at 535. One such restriction is the Tennessee General Assembly's statutory cause of action pursuant to the TPPA. Under the TPPA, an employee cannot "be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(b). Within the meaning of the statute, "illegal activities" are: "activities that are in violation of the criminal or civil code of this state or the United States or any regulation intended to protect the public health, safety or welfare." Tenn. Code Ann. § 50-1-304(a)(3).

To prevail on a whistleblower claim under the TPPA, a plaintiff must establish by a preponderance of the evidence that:

(1)     the plaintiff was an employee of the defendant;

(2)     the plaintiff refused to participate in or remain silent about illegal activity;

(3)     the defendant employer discharged or terminated the plaintiff's employment; and

(4)     the defendant terminated the plaintiff's employment solely for the plaintiff's refusal to participate in or remain silent about the illegal activity.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 437 (Tenn. 2011) (citing *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 27 (Tenn. 2011); *Voss v. Shelter Mut. Ins. Co.*, 958 S.W.2d 342, 344 (Tenn. Ct. App. 1997)).

As courts have previously observed regarding the causation element of a retaliatory discharge claim, "direct evidence of [the employer's] motivation is rarely within the plaintiff's possession." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 391 (Tenn. Ct. App. 2006) (quoting *Guy*, 79 S.W.3d at 534). Causation, or the employer's motivation in discharging the employee, must be gleaned from careful consideration of the entirety of the evidence of the circumstances surrounding the employer's action in light of the employee's refusal to participate in or remain silent about alleged illegal activities. *Id.* Because we recognize that plaintiffs in retaliatory discharge cases will primarily rely on circumstantial evidence to establish liability, *see Austin v. Shelby*

*County Gov't*, 3 S.W.3d 474, 480-81 (Tenn. Ct. App. 1999), that evidence must be more than the plaintiff's speculation on why the termination ultimately occurred. *Newcomb*, 222 S.W.3d at 391 ("A plaintiff's subjective beliefs, mere speculation, or testimony that the employee can think of no other reason for the discharge cannot, in and of themselves, create the requisite causal relationship.") (supporting citations omitted). "[C]ircumstantial evidence must be compelling on the issue that retaliation was a substantial factor in the decision to terminate the Plaintiffs." *Foster v. Colonial Dev., Inc.*, No. E2000-02917-COA-R3-CV, 2002 WL 185477, at *5 (Tenn. Ct. App. Feb. 6, 2002) (citing *Thomason v. Better-Bilt Aluminum Products*, 831 S.W.2d 291 (Tenn. Ct. App. 1992)).

The City argues that summary judgment is appropriate because Plaintiff cannot identify an illegal activity within the meaning of the TPPA and because he cannot establish that his refusal to participate in or remain silent about said activity was the *sole* reason for his termination. The City notes that it provided six non-retaliatory reasons for the termination that were upheld by this court in *Brumley II*. Plaintiff responds that his attempts to establish the elements of his claim were thwarted by the denial of discovery. He claims that he presented circumstantial evidence to establish that the only reason for his firing was to retaliate against him for reporting illegal activity, namely Chief Snyder's official misconduct and official oppression. The crime of official misconduct, codified at Tennessee Code Annotated section 39-16-402, is described, in pertinent part, as follows:

> (a)    A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:
>
> (1)    Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power;
>
> (2)    Commits an act under color of office or employment that exceeds the public servant's official power;
>
> (3)    Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment;
>
> (4)    Violates a law relating to the public servant's office or employment; or
>
> (5)    Receives any benefit not otherwise authorized by law.

(b)     For purposes of subdivision (a)(2), a public servant commits an act under color of office or employment who acts or purports to act in an official capacity or takes advantage of the actual or purported capacity.

Likewise, the crime of official oppression, codified at Tennessee Code Annotated section 39-16-403, is described as follows:

(a)     A public servant acting under color of office or employment commits an offense who:

(1)     Intentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search, seizure, dispossession, assessment or lien when the public servant knows the conduct is unlawful; or

(2)     Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful.

(b) For purposes of this section, a public servant acts under color of office or employment if the public servant acts, or purports to act, in an official capacity or takes advantage of the actual or purported capacity.

In support of his claim of official misconduct and official oppression, Plaintiff alleged that he was issued a citation at the direction of Chief Snyder for making harassing telephone calls. He claimed that the citation was improper and in violation of the law because the City did not have jurisdiction over the incident when the incident occurred in the county. He asserted that Chief Snyder was aware of the illegality of the citation due to the lack of jurisdiction. Following the incident, Plaintiff reported the incident to the Tennessee Bureau of Investigation ("the TBI"). Plaintiff claims that Chief Snyder's behavior toward him changed after the incident and that he was eventually terminated as a result of the incident.

Additionally, Plaintiff presented a plethora of evidence in response to the City's claim that one or more legitimate, nondiscriminatory reasons supported his termination. *See Brumley II*, 2013 WL 1737860, at *5-6. This evidence was relevant in this case and compelling on the issue of whether retaliation was a substantial factor in the decision to terminate Plaintiff. Considering the evidence in the light most favorable to Plaintiff, as we are constrained to do, we conclude that there was material evidence from which the trier of fact *could* conclude that Plaintiff's employment was terminated solely for his refusal to remain silent about Chief Snyder's alleged illegal actions. Accordingly, we

further conclude that the trial court erred in dismissing the complaint at this point in the proceedings because material questions of fact remained. In so concluding, we express no opinion as to whether Plaintiff's employment was actually terminated solely for his refusal to remain silent about Chief Snyder's alleged illegal actions.

## V.    CONCLUSION

The judgment of the trial court is reversed. The case is remanded for proceedings consistent with this opinion. Costs of the appeal are taxed to the appellee, the City of Cleveland.


_____
JOHN W. McCLARTY, JUDGE